## Case No. 6,003.

HAMMOND v. HUNT et al.

[4 Ban. & A. 111.][1]

Circuit Court, D. Massachusetts. Feb., 1879.

PATENT—INFRINGEMENT—LICENSE— DELIVERY OF —PRACTICE AND PLEADING.

1. The question of what amounts to a delivery of a license, considered.

[Cited in Dietz v. Ham Manuf'g Co., 47 Fed. 321.]

---

[3] This representation he made from a letter to him, written by Mr. Bond, from New Brunswick, who had gone there to consult Mr. Morris.

[4] It seems the practice for the youngest judge first to deliver his opinion, and the chief judge last.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

2. Where an exclusive license has been granted, the licensee and the patentee are both necessary parties to a suit for infringement.

[Cited in Clement Manuf'g Co. v. Upson & Hart Co., 40 Fed. 472; Rice v. Boss, 46 Fed. 196; Brush Electric Co. v. California Electric Light Co., 3 C. C. A. 368, 52 Fed. 961.]

3. As a general rule, a cestui que trust is a necessary party to a bill in respect to the trust property.

4. The practice, with reference to a plea in bar for want of parties, stated.

[This was a suit in equity by Andrew H. Hammond against Howard B. Hunt and others.]

B. E. Valentine, for complainant.

F. H. Betts, for defendants.

LOWELL, Circuit Judge. In the case of Hammond v. Mason & Hamlin Organ Co. [Case No. 6,004], affirmed 92 U. S. 724, this plaintiff sued for an infringement of the same patent, and in respect to the same form of machinery which is in controversy here. Certain agreements between the patentee, through whom the plaintiff derives title, and the organ company, were pleaded in bar of that suit, and the plea was adjudged good; it being held that the company were licensees under the patent in respect to the particular machinery then and now under judgment. The defendants here pleaded the same agreements, and that, by virtue thereof, the organ company were not only licensees, but exclusive licensees. In this case issue was taken on the plea, to settle the fact whether the agreements were ever duly delivered and recorded, and the case has now been argued on those points, as well as on the matters of law involved in the plea. The substance of those contracts is stated in the reports of the former case.

The plea does not allege that the plaintiff is not suing for the benefit of the Mason & Hamlin Organ Company, the licensees; nor that the defendants are acting under the license. The questions, therefore, are: Whether the agreements were all fully operative by delivery and due record? Whether the license is an exclusive one? If it is, whether the plaintiff can maintain his bill at all? If he can, whether the licensees are not necessary parties plaintiff with him?

The complainant denies that there is sufficient evidence of. the delivery of the Exhibits B and D (lettered in the former suit "C" and "E"), and points out that they were recorded—one of them some weeks, and the other some months—after the death of the patentee, and both of them more than three months after they were made. As to the amount of evidence; it requires very little to prove that a deed duly and carefully made and executed, and especially if it is but one of several made at the same time, some of which are admitted to have gone into effect, has been delivered. Delivery is not now a deliberate ceremony performed in the presence of witnesses, and if it is questioned, must often be inferred from conduct or other circumstances. In the present case there is ample evidence of that character. All that could possibly be inferred from the evidence, looked at in the most favorable way for the complainant, is, that Louis, the patentee, left these papers with Crosby & Gould, his solicitors, to be recorded in case the new patent, then applied for, should not be issued. That patent was not issued, and the papers were recorded. The argument thereupon is that the power to record was revoked by Louis' death. This is a misapprehension of the law. If a deed is left with a stranger to be delivered to the grantee on the happening of a contingency, the first delivery is complete, and irrevocable by death or otherwise. And by a stranger is meant one who is not a party to the deed. The fact that the persons with whom the deed was left had been acting for Louis in the matter is immaterial. Their possession would not be his possession in such a case. Or, to put it another way, if a grantor puts into his own solicitor's hands a deed, as his deed, to be delivered thereafter, the technical delivery is already made. As to this, and the evidence necessary to prove delivery under various circumstances, see Com. Dig. Fait, A 3; Shelton's Case, Cro. Eliz. 7; Bushell v. Pasmore, 6 Mod. 217; Wheelwright v. Wheelwright, 2 Mass. 447; Souverbye v. Arden, 1 Johns. Ch. 240; Jaques v. Trustees of Methodist Episcopal Church, 17 Johns. 548, 577; Hedge v. Drew, 12 Pick. 141; Doe v. Knight, 5 Barn. & C. 671. I do not mean to say that the evidence is as favorable to the complainant as I have above supposed. If these agreements are such as require to be recorded, they were recorded in due time so far as the complainant is concerned, because his title was acquired long after that time. Curtis, Pat. § 182.

Are the organ company exclusive licensees, or merely licensees? In the former case, Mr. Justice Miller says: "Without elaborating this matter, we concur in the opinion of the circuit court that Louis, having sold this invention, and doubt existing whether the purchasers would obtain a patent for it. intended by this contract and by Exhibit D to secure to them the exclusive use of that invention in connection with the first mechanism, so long as the latter was protected by any patent founded on his right as inventor." 92 U. S. 727. It is argued that this statement of the use being exclusive was not necessary to the decision, and that Judge Shepley had intimated that perhaps the use would not be exclusive after the patent had been extended. Both statements are true; but the opinion in the circuit court was much less decidedly expressed than that in the supreme court, and the reason given for the latter opinion appears to be conclusive of the point. The sale of the invention carried with it the exclusive right to all present

or future patents by the same inventor for the particular invention sold, which is admitted to be the one in question here.

Can an exclusive licensee maintain a bill in equity for infringement without joining the patentee? And can the patentee maintain one without joining the licensee? I answer both of these questions in the negative. By an exclusive license I mean one which does not amount to an assignment, by reason of something reserved to the patentee, as in Gayler v. Wilder, 10 How. [51 U. S.] 477, where the patentee excepted out of his grant the right to make the machines within a certain part of the territory granted; or in several cases like this at the bar, in which the patent has been divided by subjects, and the grant is to make certain articles exclusively.

It is familiar learning that the patent act of 1836, which was in force when these contracts were made, expressly recognized the assignment of the whole or of any undivided part of a patent, and an assignment of the entire right for any specified part of the United States, and provided that an action for damages against an infringer might be brought by any patentee, assignee or grantee of the exclusive right. St. 1836, §§ 11, 14; 5 Stat. 121, 123. It has been uniformly held that when the interest does not come within this description, but is a license, an action at law must be in the name of the patentee. The leading case is Gayler v. Wilder, 10 How. [51 U. S.] 477. Judge Shepley has held that the same rule holds good in equity (Hill v. Whitcomb [Case No. 6,502]); or rather that the licensee himself could not maintain the suit alone. He said that the contract was valid, and could probably be enforced in equity against the grantor and persons trespassing with notice of the contract, but not as a patent suit, and he dismissed the bill, because the jurisdiction of the circuit court in that case depended on the suit being maintained under the patent law.

This last point has since been ruled otherwise by the supreme court, and by Mr. Justice Clifford in this court. Two bills in equity have been sustained as patent suits between citizens of the same state, by an exclusive licensee himself, against the patentee and others jointly trespassing with him, knowing of the license. Littlefield v. Perry, 21 Wall. [88 U. S.] 205; Star Salt Caster Co. v. Crossman [Case No. 13,321]. In both these cases the owner of the patent was a defendant, and of course could not sue himself. Therefore, the question whether a third person could be thus sued, was not touched. I must adhere to Judge Shepley's decision on that point. It is to my mind much more clear that the licensee should be made a party plaintiff, because the profits and damages are his.

It may be stated broadly that the cestui que trust is a necessary party to a bill in respect to the trust property. This general rule may, undoubtedly, be relaxed when the deed or will under which the trustee holds, gives him not only the legal title, but invests him with the whole duty of receiving and distributing the fund, such, for instance, as an assignment to the assignee in bankruptcy. But I have never seen a case in which a mere nominal trustee, not having any lawful power in the premises, has been held a sufficient sole plaintiff in equity. The chief reason for making him a plaintiff at all is to prevent a future vexatious action at law by him against the defendant, which would be at once enjoined by the court of equity, but would need new pleadings and evidence. In all such cases the beneficial owner must be joined.

This plea is framed in bar, and the complainant objects that it cannot be sustained in that form as a plea for want of parties. It is true that the court would not dispose of the case on such a ground without giving the complainant an opportunity to add the necessary parties, if he is able to procure their consent, which I suppose, in this case, is unlikely. Here the plaintiff cannot make them defendants because he then would have no equity left in his bill. There is some evidence that he bought the patent without actual notice of the agreements. But that he is bound by them as against the organ company, is conclusively decided by the former case; and, therefore, he cannot now say that they should be brought in as defendants to try that title. Although the effect of this plea will not be a peremptory dismissal of the bill, it is usual to frame it as a plea in bar, and the plea in this case contains the requisites of such a plea, the principal of which is that it should describe the persons whose absence is objected to. In this respect it resembles a plea in abatement, at law. In equity, the objection may be taken by demurrer, if the want of parties appears on the face of the bill, or by plea, or answer, or orally at the hearing. Rule 53, in equity, limits the right to this extent, that if the objection is taken for the first time at the hearing, the court shall be at liberty, if it think fit, to make a decree, saving the rights of the absent parties.

. Plea sustained for want of parties; complainant has leave to amend on or before March rules.