Knowles, District Judge.
In this case the California Electric Light Company, which will be hereafter designated as the “California Company,” and San Jose Light & Power Company, which will he hereafter called the “San Jose Company,” desiring to bring an action against the Electric Improvement Company of San Jose, which will be hereafter called the “Electric Improvement Company,” for an infringement of letters patent No. 219,208, for an improvement in electric arc lamps, granted to one Charles F. Brush, joined with them as a coplaintiff the Brush Electric Company, which will hereafter he called the “Brush Company.” The Brush Company is the owner of said patent by virtue of an assignment from said Charles F. Brush. The Brush Company granted one William Kerr an exclusive license to use and sell, but not to manufacture, any and all inventions and devices under any and all patents owned or controlled by it, or which it might become possessed of, pertaining to dynamo electric machines, lights, lamps, carbons, and similar apparatus, for the full end of the term of such patents, and all extensions and reissues thereof, in the states of California, Oregon, Nevada, and territory, now state, of Washington. William Kerr, with the written consent of the Brush Company, assigned this license to the California Company. This contract was made with the said Brush Company when it was designated as the “Telegraph Supply Company.” By an act of the legislature of Ohio, under whose statutes this corporation was created, the Telegraph Supply Company had its name changed to that of the “Brush Electric Company.” On the 27th day of March, 1882, the California Company granted to a corporation known as the San Jose Brush Electric Light Company an exclusive license to use, rent, and sell *958 to others for use and sale, the said lamp described in said letters patent No. 219,208, within the city of San Jose and the town of Santa Clara, in the state of California. Subsequently the San Jose Electric Light & Power Company was incorporated, and the said San Jose Company conveyed to it the license granted to it. After the said suit was instituted, the Brush Company came into the circuit court for the northern district of California, where the same was pending, and moved the court to dismiss the action, as far as it was concerned, on the ground that its name had been used without its consent, and without authority or right. The California Company resisted this. The question is here presented as to the right of the California Company to use the Brush Company’s name in instituting within the state of California a suit for the infringement of said letters patent. This case was before this court on a motion to dismiss the appeal of the Brush Company, pending in this court, on the ground that the order of the circuit court overruling the motion of the Brush Company to dismiss the cause as to it was not a final judgment. Upon considering the question then presented, we held that the order overruling said motion was a final judgment upon an important collateral matter, and appealable. 51 Fed. Rep. 557. What was it a final judgment upon? It was a final judgment upon the point as to the right of the California Company in such an action to join as a coplaintiff with it the Brush Company. There was some point made in the argument as to the manner in which this question should be determined, and it was intimated that the California Company should institute suit against the Brush Company in Ohio, under whose laws it was created, to determine the same. The Brush Company saw fit, however, to come into the circuit court of California, appeal to its jurisdiction, and ask to have it determined by it. It did so, and determined adversely to the Brush Company, and we are here called upon to review that judgment.
Upon the hearing of the motion to dismiss, numerous affidavits were introduced upon the point that the Brush Company had given the California Company an express permission to use its name in all suits within California, Nevada, Oregon, and Washington for an infringement of said patent. In these it appears that in one suit it had given such permission, namely, against the Electric Improvement Company of San Francisco, and also that this company owned 3,750 out of the 5,000 shares of capital stock of said Electric Improvement Company. From this fact the California Company contends that the Electric Improvement Company is but the agent or creature of the San Francisco Company, and that a permission to use the Brush Company’s name in suing one included the other. While the facts are sufficient to warrant the suspicion that the former is but the agent of the latter, I do not think the evidence presented warrants the court in finding as a fact that such is the case. There is a statement in the affidavit of Roe to the effect that it was understood between the Brush Company and the California Company that all infringers on the Pacific coast should be actively and earnestly prosecuted by both the Brush Company and the California Company, and that they should join in all such actions. This was corrobo *959 rated by the affidavits of Kerr and Cornwall. The affidavit of N. S. Possons, who was for some years superintendent of the Brush Company, is to the effect that there was an understanding between the officers of the Brush Company that it would sustain and support the California Company in all legal or other efforts, made in court, or out of it, to defeat infringing on machinery which said California Company was using or selling under the contract made by it with said Brush Company. The facts out of which any understanding arose with the California Company and the Brush Company should have been stated. Whether or not there was any such an understanding was the very point at issue, and it was for the court, under the evidence, to determine whether such an understanding had been reached, and not for the witness. A witness cannot testify to a conclusion of law. Whart. Ev. 507. As a rule, witnesses must state facts, and not draw conclusions from the evidence, or give opinions. Id. 510, and note. The question did not require the opinion of an expert. Hence the witness had no right to state the conclusions he reached from the evidence. The evidence of Possons does not go to the point of any agreement between these companies. The officers of the Brush Company may have agreed among themselves to the effect stated, but this would not prove any agreement between the said two companies. After reviewing the evidence, we cannot find that there was any express agreement entered into between the California Company and the Brush Company to the effect that the former might use the name of the latter in suits for infringements of said letters patent, instituted within the states named in the license to it. The burden of proof was upon the California Company to establish this fact. Was there any implied agreement to that effect arising out of the contract of license between the two companies, and the relations thereby created between them? As I have stated, the grant was of the exclusive right to use and sell within the states named. This, under the authorities, was perhaps nothing more or less than a license. Walk. Pat. § 296; Hamilton v. Kingsbury, 17 Blatchf. 264-270; Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. Rep. 334.
There is no foundation for the claim of appellant that the contract between said companies amounted only to the constituting of the California Company the agent for the selling of the Brush Company’s devices and machines, which agency might be revoked or modified by the Brush Company, its principal, at any time. The affidavits of Potter, Leggett, and Stockley, as to the intent of the contract with Kerr, and hence with the California Company, made August 2,1879, are subject to the same criticism passed above upon the affidavit of Roe. It was not for them, but the court, to say what was the intent of the parties to that contract. This the court should determine from the language thereof, if possible. The exclusive right granted to a person other than the patentee to use and sell a patented device within a named district of country excludes the owner of the letters patent from selling the same or using the same in that region. A licensee does not use or sell in the name of the owner of the patent, but in his own name, and for his own benefit. Having *960 an exclusive license to use and sell, no one has a right to use or sell in the country of such a licensee.
It will thus be seen that the licensee in this case received very important rights by virtue of its grant. If it cannot use the name of its licensor in an action to protect its rights against an infringement of the patented device or improvement it has the exclusive right to use and sell, we have a case of a person possessing important rights with no legal power to protect them; for a licensee cannot sue in his own name for an infringement of the patent concerning which he has a license. Gayler v. Wilder, 10 How. 477; Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. Rep. 334. “When a person grants anything to another he impliedly grants him the means of enjoying it.”' , 2 Washb. Real Prop. 302. The sale of personal property located upon the land of the vendor impliedly grants to the vendee the right to enter upon the land in order that he may take possession of and remove this property purchased. Rogers v. Cox, 96 Ind. 157. These rules of law were established by courts to the end that justice should be subserved. The assignment of a chose in action at common law was considered to be in the nature of a declaration of trust, the assignor holding the legal title for the benefit of the assignee. 2 Bl. Comm. 442. In Littlefield v. Perry, 21 Wall. 205—223, the supreme court held that a patentee retained the legal title in trust for his licensee. The right of an assignee of a chose in action to sue the debtor grew out of an express or implied contract to that effect. At. common law the assignment of a chose in action was accompanied by an agreement that the assignee should have the right to sue, in the name of the assignor, the debtor. 2 Bl. Comm. 442. It is well known that it was not usual to reduce this agreement to writing, and that it was an implied, rather than express, agreement, as a rule. An implied agreement or contract is “such as reason and justice dictate, and which, therefore, the law presumes that every man undertakes to perform.” Id. 443. We find that in certain cases the licensee makes with the licensor an express contract to the effect that he may use the name of the .licensor in suits for an infringement of a patent concerning which he has a license, in order that his rights may be protected. In one of the briefs of appellant this agreement is spoken of as one of frequent occurrence. This matter of using the name of the owner of a patent by the licensee is a right, then, resting in contract. In speaking of the power of a licensee to seek redress for a wrong inflicted upon him by the infringement of the patent concerning which he has a license, the language of the courts generally is that he cannot sue, in his .own name, an infringer. This would imply that he might sue in the name of the legal owner of the patent for that purpose. This is about the same language as was used at common law in regard to an assignee of a chose in action. He could not sue the debtor in his own name, but he could use the name of the assignor in bringing an action against the debtor without the assignor’s consent. Welch v. Mandeville, 1 Wheat. 233. In the case of Littlefield v. Perry, supra, the supreme court did not hesitate to maintain an action in the name of the licensee for. an infringement of a patent, where *961 the patentee was the infringer. In the case of Waterman v. Mackenzie, 188 U. S. 252, 11 Sup. Ct. Rep. 334, the supreme court held that a licensee might sue in his own name when it was necessary to prevent an absolute failure of justice. This is the effect, I take it, of the language of the court, there used.
These cases show how far courts have been willing to go in this matter to subserve the ends of justice. The Brush Company, being an Ohio corporation, can be sued only in that state, and hence could not be made a party defendant in this suit. Unless the California Company can use the name of the Brush Company herein, it has no means of protecting its rights. I think the same reasons that induced courts to hold that a grant gives the right to enjoy the thing granted, that implies a license to enter upon the lands of another to remove personal property thereon which the landowner has sold, and that implies a contract on the part of the assignor of a chose in action that the assignee may use his name in a suit thereon, should induce courts to hold, in a case like the one at bar, that there is an implied contract on the part of the owner of a patent, conveying an exclusive license, that the licensee should have the right to use his name in order that he may protect his rights. The appellant urges that the same rule should not apply in this case as in a chose in action, because the assignee of such an obligation receives the whole beneficial interest in the same. I cannot see, however, why the rights of an exclusive licensee, having as extensive interests as those of the California Company, should not be protected in law, as well as the assignee of a chose in action, and why the law would not imply the right to use the name of the grantor or assignor in one case as well as the other. The same considerations that induced courts to hold that such a contract was implied in one would apply to the other. In some cases it is held that in a suit in equity against an infringer an exclusive licensee and the patentee must both be made parties. Hammond v. Hunt, 4 Ban. & A. 111; Huber v. Sanitary Depot, 34 Fed. Rep. 752. If the right did not rest in contract to make the patentee a party plaintiff in such a suit, a licensee such as the California Company would be powerless, because the Brush Company could not, as I have stated, be made a party defendant, being without the jurisdiction of the court. Reason and justice would .dictate that, under such circumstances, the law should imply or presume such a contract between the parties. As far as I have been able to ascertain, it has been always held, whenever the question has been presented, that an exclusive licensee has the right to use the name of the owner of the legal title to the patent in suits to protect his rights. In the case of Goodyear v. Bishop, 4 Blatchf. 438, Nelson, J., held that, where a suit was brought at law against an infringer in the name of the owner of a legal title to the patent, for the benefit of the licensee, a motion, made with the consent of the owner of the patent, to dismiss the action, could not be sustained, and the same was overruled. Appellant affirms that in this case there was an express contract that the licensee might use the name of the owner of the patent. This is not the language of the contract referred *962 to in that decision. It was that the owner was to sue infringers, not that the licensee might use his name. If such was the language of the contract, this would show, however, that this right was the subject of contract; and, where a matter is the subject of contract, there may arise from circumstances an implied contract, which will be as binding as an express contract. In the case of Brush-Swan Electric Light Co. v. Thomson-Houston Electric Co., 48 Fed. Rep. 224, it was held by Judge Ship-man that a licensee, whenever necessary to assert his rights, has prima facie an implied power to use the name of the owner of a patent in which he has a license in any action against an infringer for that purpose. It is contended because the court found in that case that the Thomson-Houston Company had a controlling amount of the capital stock of the Brush Electric Company, that therefore this latter company was a party to the action, and that Judge Shipman in effect so held. I think this is a mistake. While the learned judge says that really the Brush Company was a codefendant with the Thomson-Houston Company in the suit, I do not suppose he really meant this as a matter of law in that case, for he says in the next sentence: “But, being a resident of Ohio, it cannot be served with process as a codefendant in this suit.” What he did mean, I apprehend, was that the Brush Company was in such a condition that, if service could be made upon it, that company would be a codefendant. The case should be considered, however, in view of the issue presented. The Brush-Swan Company brought an action against the Thomson-Houston Electric Company for an infringement of the very patent presented in this case. In this action it joined with it the Brush Company as a coplaintifif, without its consent. The Brush Company, as in this case, came into court, and moved to strike out its name as a party complainant, because the bill had been filed without its consent or authority. This motion the court denied. This motion was not denied because the Brush Company was already a defendant in the case, but because the Brush-Swan Company had, under the circumstances, the implied power to use against its will the Brush Company’s name in such a suit against the Thomson-Houston Company. It would not be a very satisfactory reason to assign for refusing to strike out the Brush Company’s name as a plaintiff that it was a co-defendant with the Thomson-Houston Company in the same case already, and I do not understand the learned judge to so decide. The case is one fully in point in this case. The Brush Company would undoubtedly have the right to be protected from any costs that might be adjudged against it, or incurred in the management of the suit in question. The court, upon proper motion, would without doubt compel this protection. The usual practice is in such cases to require a sufficient bond of indemnity. Under such conditions there would he an implied contract on the part of the Brush Company to permit the use of its name by the California Company in the suit at bar.
It is contended by the Brush Company that, it not in fact owning the title to the patent, and it not having been obtained at the time the Brush Company, under the name of the Telegraph Supply Company, made
*963 its contract of license with William Kerr, the assignee of the California Company, therefore nothing in fact passed by that contract; that it should be'treated as a sale of personal property that was notin existence. But an assignment of a patent is good if made before the patent is actually obtained. Gayler v. Wilder, 10 How. 477. The same doctrine is affirmed in Littlefield, v. Perry, supra. In this case, although the patent had not been obtained at the time of the granting of the license, it was afterwards obtained, and the Brush Company became the owner thereof. The California Company has been, with the knowledge of the Brush Company, conducting an extensive business pertaining to the patent named, relying upon its license to use and sell the same. According to the affidavit of Roe, the California Company has expended in the electric light business in the city of San Francisco, $892,531.31. It has purchased from the Brush Company electrical apparatus for which it has paid said company $683,741. It has and is conducting an extensive business in such apparatus within the states named in its contract of license, and has sold to very many other companies such apparatus. The two companies have acted and conducted business since the Brush Company became the owner of the patent named, up to the present time, upon the theory and basis that the license granted was valid. This is emphasized in the letters of the Brush Company to the California Company in regard to the suit against the Electric Improvement Company of San Francisco. The Brush Company, in writing to the California Company about the same, calls it “your suit,” namely, the California Company’s suit. The California Company is required to pay the expenses of the attorneys the Brush Company sends to try the same. Many things more might be stated as to what these letters disclose upon this point. There can be no doubt but that the Brush Company considered and treated the California Company as its exclusive licensee to use and vend said patented device. In the terms of the grant of license it was contemplated that the license should extend to any patents which the Brush Company should thereafter acquire pertaining to dynamo electric machines, lamps, carbons, and similar apparatus. Under such circumstances, the Brush Company should be estopped to deny the validity of the license granted the California Company on the ground that it did not own said patent, or that it had no existence at the time the grant of license was made, or on the ground that it had no authority at that date to grant the license. To hold otherwise would work a most extensive fraud upon the California Company. The sale of a patent right contains an implied warranty as to title, and an after-acquired title obtained by the vendor inures to the vendee. Faulks v. Kemp, 3 Fed. Rep. 898; Overran v. Burdsall, 20 Fed. Rep. 835. In the case of Gottfried v. Miller, 104 U. S. 520, the supreme court applied this doctrine to a case where the purchaser of a machine had only a license to use it. The same rule that applies to estoppels where a vendor of a title in fee to land subsequently acquires the full title, which he did not possess at the time of sale, applies to cases of the sale of patents, according to said case. The rule in such cases would fully cover the *964 case at bar, and maintain the title of the California Company by way of estoppel. Smith v. Sheeley, 12 Wall. 358.
The Brush Company claims that the California Company has assigned all its rights in the license in the city of San Jose and town of Santa Clara to the San Jose Company, and that, as this action is for an infringement on the said patent in those places, the California Company has no interest in this suit; hence it has no right to use the name of the Brush .Company therein. Again, the Brush Company urges that the California Company had no right to divide its license into parts, and assign a part to the said San Jose Company. These two positions are inconsistent. I think the latter position is the correct one. Unless there is a manifest intent in the contract of license that the licensee is to have the power to divide up his license into parts, and assign such parts in severalty, no such right exists. Walk. Pat. § 310. As a general rule, it may be said that a license is not divisible. This contract should be construed with reference to this characteristic of this class of rights. Considering this, and I think the term “assigns,” as used in the license under consideration in this case, must be construed as the right to assign the license as an entirety, and not in parts. This question was considered in the case of Brooks v. Byam, 2 Story, 525, and there it was held that the word “assigns” in a license must be so construed where it did not clearly appear that there was an intention manifested in the contract of license to establish a different rule. The assignment to the San Jose Company, then, was without authority, and the rights of the California Company in San Jose and Santa Clara still remain with it. The fact that it has undertaken to make an assignment which it had no authority to make will not work any forfeiture of its rights. There is no stipulation in the contract of license that any such action shall work a forfeiture of the rights granted by it. Under such circumstances, there is no forfeiture. Walk. Pat. § 308; Purifier Co. v. Wolf, 28 Fed. Rep. 814.
There is some claim by the California Company that the San Jose Company is an agent which it has created, or caused to be created, with a view of extending the business of the sale of the lamps named in the patent. If so, I do not see that it is a necessary party to this action. While it may be true that the San Jose Company is not a proper party to this action, yet I do not see how this fact can prevent the California Company from exercising its right to join with it therein the'Brush Company. For the reasons assigned we hold that the judgment of the court below was correct, and should be affirmed, and it is so ordered.