HURD et al. v. SEIM et al.

(Circuit Court of Appeals, Second Circuit. November 20, 1911.)

No. 122.

PATENTS (§ 327*)—INFRINGEMENT—EFFECT OF PRIOR ADJUDICATION.

A decree in a suit for infringement by the owner of a patent against the manufacturer of an alleged infringing article, adjudging the patent void, not appealed from, frees the product of the defendant from the monopoly of the patent, and purchasers of the same may resell or use such product anywhere in the United States, without being subject to suits for infringement by the owner of the patent or any one in privity with it.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 327.*

Operation and effect of decision in equitable suit for infringement of patent, see note to Westinghouse Elect. & Mfg. Co. v. Stanley I. Co., 68 C. C. A. 541.]

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit in equity by James D. Hurd, the Consolidated Rubber Tire Company, and the Rubber Tire Wheel Company against William Seim and Gustave Reissig. From an order granting a preliminary injunction (189 Fed. 591), defendants appeal. Reversed.

This cause comes here upon appeal from an order of the Circuit Court, Northern District of New York (189 Fed. 591), granting a preliminary injunction restraining defendants from infringing the patent in suit during the pending of the action. The action is for infringement of the well-known Grant patent (No. 554,675, dated February 15, 1896) for rubber-tired wheel. The owner of the patent is the Rubber Tire Wheel Company. On October 11, 1897, it conveyed to Hurd an exclusive license and shop right to put on rubber tires according to the improvements of the patent in certain parts of Massachusetts and Vermont and in 16 counties in the state of New York. On July 18, 1899, the said owner conveyed (subject to Hurd's rights) an exclusive license to make and vend such tires throughout the United States to the Consolidated Rubber Tire Company. Hurd, who brings the suit, has

---

joined the owner and the exclusive licensee with him as parties complainant. The defendant's acts which are complained of took place within the New York portion of Hurd's territory.

C. K. Offield, for appellants.
W. E. Ward, for appellees.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The defendants do not themselves manufacture rubber tires. Their business is the manufacture and repair of carriages and carriage wheels. They buy their rubber stock from others and place it on the wheels. The tires, which are the subject of this controversy, were bought by defendants from the Diamond Rubber Company of New York. An injunction suit was brought some years ago against that company by the owner and exclusive licensee, in which it was held that tires such as these infringed the patent. See the opinion of this court in Consolidated Rubber Tire Company v. Diamond Rubber Company, 157 Fed. 678, 85 C. C. A. 349; Id., 162 Fed. 892, 89 C. C. A. 582, and the opinion of the Supreme Court in the same suit, 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527. As will be seen on referring to these opinions, the Diamond Company itself did not manufacture tires, but handled and sold those bought from others. Among those from whom it bought were concerns which had been sued for infringement (by reason of making tires like these) in other circuits and which had prevailed in such suits. In view, therefore, of the ruling of the Supreme Court in Kessler v. Eldred, 206 U. S. 285, 27 Sup. Ct. 611, 51 L. Ed. 1065, this court inserted the following clause in the final decree in Consolidated Rubber T. Company v. Diamond Rubber Company:

"Nothing in this injunction shall prevent, or is intended to prevent, or enjoin this defendant from handling, using, and selling rubber tires and rims covered by the Grant patent, manufactured by the Goodyear Tire & Rubber Company. Having a right to manufacture, use, and sell such tires under a judicial decree in the federal courts of the Sixth circuit, or manufactured by the Kokomo Rubber Company, having a right to manufacture, use, and sell such tires under a judicial decree in the district of Indiana, Seventh circuit, or manufactured by the Victor Rubber Tire Company, under a judicial decree in a litigation in the federal courts in the Sixth circuit, wherein in such litigations it has been judicially determined that the said Grant patent is invalid and void."

Assuming for the moment that all the parties to the present suit are the same as or privies of those in the earlier one, this exception cannot be construed as authorizing the sale of any infringing tires, except such as were manufactured by the Goodyear, the Kokomo, or the Victor Companies. It is contended by defendants that tires which are the subject of this action were made by the Kokomo Company. In the opinion of the Circuit Court it is stated that:

"It does not satisfactorily appear here that the alleged infringing wheels, or parts thereof, handled and sold by these defendants, were made or sold by the Kokomo Company at any time or prior to the decision by the Supreme Court."

It is immaterial whether this finding is correct or not, since the injunction which was granted covers "making, using, or selling any rub-

191 F.—53

ber-tired wheels as described and claimed in said letters patent." This includes, of course, Goodyear, Kokomo, and Victor tires; and the appeal properly brings up the real question in the case. For the sake of simplicity we may consider any one of these tires—for example, the Kokomo. The question presented is this: Are tires made by that company free of the monopoly of the patent, so that they may be bought and sold by any one?

In Kessler v. Eldred, 206 U. S. 285, 27 Sup. Ct. 611, 51 L. Ed. 1065, the Supreme Court said:

"The question here is whether, by bringing a suit against one of Kessler's customers, Eldred has violated the right of Kessler. The effect which may reasonably be anticipated of harassing the purchasers of Kessler's manufactures by claims for damages on account of the use of them would be to diminish Kessler's opportunities for sale. No one wishes to buy anything, if with it he must buy a lawsuit. That the effect to be anticipated was the actual effect of the Briltweiser suit is shown by the statement of the facts. Kessler's customers ceased to send orders for lighters, and even refused to pay for those which had already been delivered. Any action which has such results is manifestly in violation of the obligation of Eldred, and the corresponding right of Kessler, established by the judgment. Leaving entirely out of view any rights which Kessler's customers' have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone."

The right of the Kokomo Company to make and sell tires would be practically useless, if the purchaser could neither resell nor use them. Tires made by this company must, therefore, be held to be immune from prosecution, as infringements by the owner of the patent, which brought suit against the Kokomo Company in the Seventh circuit, or by any one in privity with such owner. If the complainant in this suit, Hurd, be in privity with the Rubber Tire Company, which as owner brought the suit against the Kokomo Company in that circuit, the order now appealed from should be amended by inserting a similar provision to that approved in Consolidated Company v. Diamond Rubber Company, excepting tires made by the Kokomo Company from the operation of the injunction.

The complainant Hurd, however, insists that this should not be done. He asserts that he has an equity superior to that of the Kokomo and other companies. The ground of this contention is that he obtained his license from the Rubber Tire Wheel Company, the owner of the patent prior to the decisions in the Western circuits which held the Kokomo and other tires not to be infringements. He was not a party to those Western suits, and therefore insists that he cannot be bound by these decisions, and that in the territory allotted to him no infringing tires, Kokomo or other, can be sold. By the grant relied upon the Rubber Tire Wheel Company—

"grants to [Hurd] an exclusive license and shop right to put on rubber tires according to the improvement and designs of the patent in the following territory and not elsewhere: [Here follows list of counties]—with the exclusive right to ship and sell the same throughout said territory and not elsewhere. The exclusive right aforesaid is subject, however, to the rights of the Hartford Rubber Works Company under .[a certain contract]. · And the said first party further agrees that it has not and will not license others to put on rubber tires in .the territory aforesaid; it being expressly understood, however,·

that the first party cannot and does not undertake to prevent licensees under licenses heretofore granted and carriage men and wheel manufacturers in other states and territory from shipping vehicles and wheels into said territory of the second party with the rubber tires already on the wheels."

It would appear from this language that Hurd is not an assignee of the patent, nor does he hold such an exclusive license as would make him the owner of the whole patent. He obtained, however, more than a mere shop right, having the exclusive right to make and sell (with the exceptions noted) within a limited territory.

The determination of the question here presented must depend upon the construction to be given to the opinion of the Supreme Court in Kessler v. Eldred. On the one side, it is contended that the effect of that decision was to give immunity from further annoyance to an alleged infringer, who, when sued by the owner of the patent, had finally prevailed; that his position is, for all time, the same as if he had received a nonexclusive license of even date with the patent and running for its full term, or as if there was, as to him, no patent in existence. On the other side, it is insisted that the decision of the Supreme Court is extremely narrow; that it proceeds entirely upon the theory of res judicata; that the decision in the Kokomo Case in Indiana does not bind Hurd, because he was not a party to it, and was not a privy with the complainants there, because he had no mutual rights with them in the Grant patent, nor did he have any successive rights from them in relation to that controversy, his license having been granted long before the suit was instituted; that he is entitled to his own day in court, and is entitled to assert the rights secured by his own license against any one who infringes within his territory.

We are much in doubt as to which is the correct interpretation to be put upon the opinion in Kessler v. Eldred, and desire the instruction of the Supreme Court for the proper decision of this appeal. To that end we are prepared to certify the question under section 6 of the Court of Appeals act (Act March 3, 1891, c. 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 549]), if the complainant will give a bond in the amount of $5,000, conditioned to respond for any damages which may result from continuance of the injunction pending certification of the question and reply thereto. In that event the parties may prepare and submit a proposed form of certificate.

If, however, complainant is unwilling to give such bond, the temporary injunction will be vacated, for the reason that the question presented is so doubtful that relief of that sort should be granted, if at all, only at final hearing.