RADIO CORPORATION OF AMERICA et al. v. INDEPENDENT WIRELESS TELEGRAPH CO. et al.

(District Court, S. D. New York.   October 13, 1923.)

Patents ⬅️290—Licensee of patent could not sue infringer, without joining patent owner as plaintiff.

An exclusive licensee of a patent, under a contract reserving to patentee certain nonexclusive, nontransferable, and personal licenses, could not sue an infringer without joining the owner of the patent as plaintiff, and the mère addition of owner's name to caption without its consent did not comply with this rule.

Reversed in 297 Fed. 521.

W. H. Taylor, Jr., of New York City, for the motion.

L. F. H. Betts, of New York City, opposed.

LEARNED HAND, District Judge.   The bill alleges that the inventions in suit were made by De Forest and assigned by him to the plaintiff the De Forest Company.   On March 16, 1917, the De Forest Company granted an exclusive license to the Western Electric Company, which granted the right "to make, use, * * * and to sell" the inventions in suit for the term of their existence, subject to a license theretofore given to the defendant American Telephone & Telegraph Company.   This contract reserved, however, to the De Forest Company, certain nonexclusive, nontransferable, and personal licenses, to make and sell the patented apparatus for specified purposes not necessary to enumerate.   The Western Electric Company later assigned all its rights in the contract to the defendant American Telephone & Telegraph Company, in whom thereupon there vested all the interest in the patents in suit, except those reserved to the De Forest Company as above stated.

On November 20, 1919, the General Electric Company made a contract with the plaintiff Radio Corporation, by which it granted to it an exclusive license to use and sell for "radio purposes" all inventions then owned by it or thereafter acquired.   "Radio purposes" was defined "as the transmission or reception of communications * * * by what are known as electro magnetic waves, but not by wire."   At this time the General Electric Company did not have any interest in the patents in suit, but on July 1, 1920, the defendant American Telephone & Telegraph Company and the General Electric Company entered into a contract by which they exchanged rights in various patents or applications owned or controlled by each.   This contract is very long and complicated.   Among the rights conferred upon the General Electric

Company were (1) a nonexclusive license to make wireless apparatus for the United States; (2) an exclusive license "in the filed of wireless telegraphy"; (3) an exclusive license to make, use, and sell wireless telephone apparatus for communication between automotive vehicles, except railways; (4) an exclusive license to make, use, and sell such apparatus for amateur purposes, or where "the business use is incidental," or where one of the stations is portable; (5) an exclusive license to make, sell, and use wireless telephone apparatus for electric light power and traction companies; (6) an exclusive license to make, use, and sell wireless telephone apparatus as part of a public service telephone system and for all commercial uses.

Contemporaneously with this contract the defendant American Telephone & Telegraph Company consented, as was required in the contract, to the extension by the General Electric Company of its acquired rights to the Radio Company. From these documents it follows that the defendant American Telephone & Telegraph Company, having full rights in the patents in suit, subject to the reserved licenses of the De Forest Company, granted exclusive licenses to the General Electric Company for certain uses of those patents, and that the Radio Company has licenses from the General Electric Company to use and sell the patented apparatus for "radio purposes," and, if the General Electric Company will not provide it with apparatus, to make the same.

The motion does not challenge the bill as defective because of the absence of the General Electric Company, and I shall therefore assume, without passing on that question, that the agreement of November 20, 1919, operated to pass all rights of the General Electric Company, acquired under the contract of July 1, 1920, to the Radio Corporation. So viewed, all parties are before the court who have any interest in the patents in suit, except the De Forest Company, and the interests of that company are merely a nonexclusive and personal right to make, sell, and use the inventions for its own profit.

Thus stated the case seems to me to fall squarely within Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504. In that case, which was an action at law, Wilder, the assignee of a patent for safes, sued in his own name. It was proved that Wilder had given Herring an exclusive right to make and sell the safe in the state of New York, where the infringement occurred. Wilder, however, reserved to himself the right to make safes in New York, and to sell them therein on payment of the same royalty that Herring was to pay him. The Supreme Court held that, in order to be an assigment authorizing the licensee to sue in his own name, the license must exclude the licensor, and that, as Wilder had reserved the right to make and sell safes within New York, he remained the owner, and he alone could sue. The authority of that case has remained unshaken to the present time.

While Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923, was a case where the exclusive license was to make and sell, but not to use, the result was the same in a suit in equity. While the patentee had not only reserved the right to use, but had not given it to the licensee, the case was treated as an instance of the doctrine laid down in Gayler v. Wilder, supra. Whether or not Wilson v. Rousseau, 4 How. 646, 686, 11 L. Ed. 1141, would be decided in the same

way to-day, the decision depended upon the absence of any right in the licensee to exclude the licensor himself.

The reason usually given for the doctrine is that the infringer will be subject to two suits, unless all parties are joined who have an interest in the patent. Yet, so far as I can see, if the outstanding interest is only a personal right to make, sell, and use the invention, there is no possibility of a second suit. The licensor in that case, having no right to exclude any one, could not sue the infringer. It is true that, if the license is to make, sell, and use the invention, for limited purposes, or to make, or sell, or use alone, the infringer might be in danger, because the licensee might fail in showing that the defendant's use was within the terms of his license, and the defendant would then succeed. Yet such a decree would not protect him from a subsequent suit by the owner for the acts charged as an infringement in the first.

Whether or not the rule is based on any necessity in justice, it is clear that the lower federal courts have tried to break its force. Thus in Brush-Swan Co. v. Thomson-Houston Co. (C. C.) 48 Fed. 224, the exclusive license was to sell only, but Judge Shipman allowed the licensee to join as party plaintiff the owner without its consent. While recognizing the usual rule, he thought that the circumstances justified an exception. The infringer corporation had complete control of the owner through ownership of its stock and forbade its voluntary joinder as coplaintiff. This Judge Shipman thought brought the case within the rule of Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 577.

The doctrine so laid down was extended in the Ninth circuit to a case where there was no evidence of such control in Brush Electric Co. v. California, etc., Co. (C. C.) 52 Fed. 945. It was there held that an exclusive licensee, though only to use and sell, had an implied authority to use the owner's name, though, as I have already said, the result would be to expose the infringer to a possible second suit on the same machine, if he had made, but not sold or used, it. That case has been followed in the Ninth circuit, and was settled law, at least until recently. Excelsior Wooden-Pipe Co. v. Allen, 104 Fed. 553, 44 C. C. A. 30; Excelsior Wooden Pipe Co. v. Seattle, 117 Fed. 140, 55 C. C. A. 156. The doctrine appears to have been recognized in a dictum by the Circuit Court of Appeals for the Second Circuit in Hurd v. James Goold Co., 203 Fed. 998, 122 C. C. A. 298, though no cases were cited. In that case the license, as appears in Hurd v. Seim, 191 Fed. 832, 834, 112 C. C. A. 346, did not give Hurd the right to sue in his own name. I should not feel justified in disregarding the dictum, except for the last case in the Supreme Court.

In Crown v. Nye Tool Works, 261 U. S. 24, 43 Sup. Ct. 254, 67 L. Ed. 516, the owner had given the plaintiff an express license to sue an infringer on the plaintiff's own behalf. This the licensee did, and was defeated for defect of title. I cannot suppose that this decision turned only upon the failure of the plaintiff to add the name of the owner to the caption, because the whole discussion forbids it, and because the bill in that event would certainly not have been dismissed without leave to plead over. The defect was one of substance, going to the insufficiency of the plaintiff's title, which could have been cured only by the actual presence in the suit of the owner.

Yet the license there before the court protected the defendant completely, because it assigned all the owner's rights as against the infringer in question, and the owner could not therefore have maintained suit any better than if he had completely assigned the patent. It was therefore a stronger case for the plaintiff than in the cases of the Ninth circuit or in Hurd v. James Goold Co., supra. If so, it appears to me that the greater must include the less, and it must be taken as now established that, unless the license conforms with the definition given in Waterman v. Mackenzie, supra, the licensee may not sue alone.

I cannot regard the mere addition of the owner's name to the caption as a compliance with the rule. If so, the Supreme Court has unduly concerned itself with what is no more than a formality. The doctrine has never been put forward as a question of the caption of the suit, but as requiring the actual presence of the owner. The theory evolved in the Ninth circuit rested upon a supposed right to appear for the owner, implied from the license. In my judgment it necessarily fell as soon as the Supreme Court held that even an express grant of the right to sue was not enough to give the plaintiff any capacity to sue. I have, of course, nothing to say about the necessity or wisdom of the rule; it is enough that it is settled by the highest court.

Bill dismissed, for lack of parties, with costs.