## Case No. 14,271.

TURRILL v. ILLINOIS CENT. R. CO. et al.

[3 Biss. 72;[1] 3 Chi. Leg. News, 337.]

Circuit Court. N. D. Illinois. July, 1871.

PATENTS—COMBINATIONS—SWAGE-BLOCK.

1. The Cawood patent for an improvement in anvil or swage-block for welding railroad bars construed and held valid.

2. The effect of removing the whole or a part of the anvil considered.

These were five bills filed by Samuel H. Turrill, as assignee of the Cawood patent [against the Illinois Central Railroad Company, the Chicago, Burlington & Quincy Railroad Company, the Michigan Southern & Northern Indiana Railroad Company, the Chicago & Alton Railroad Company, and the Pittsburg, Ft. Wayne & Chicago Railway Company], for an accounting, and damages for an alleged infringement of the patent.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

West & Bond, B. R. Curtis, and E. W. Stoughton, for complainant.

J. N. Jewett, for defendants.

DRUMMOND, Circuit Judge. This controversy grows out of an alleged infringement by the defendants of a patent [No. 15,687] granted to Joseph D. Cawood, on the 9th of September, 1856, for an improvement in the common anvil, or swage-block, for the purpose of welding up and reforming the ends of railroad bars when they have become injured from unequal wear, and of which the plaintiff is the assignee. This patent has been before the supreme court of the United States, and has, to some extent, at least, been construed (Turrill v. Michigan Southern & N. I. R. Co., 1 Wall. [68 U. S.] 491), in which case the specifications and claim are set forth. It has also been before this court [Case No. 14,-270]. In this last case the law and facts were submitted to the court, and the patent was held valid, though attacked by the angle-iron machine, the bayonet machine, and the Church machine. The court was then of the opinion that there was nothing in these old machines to prevent the operation of the patent of Cawood, as construed by the supreme court. It was admitted, in view of the previous machines, that the Cawood patent could not have a broad construction, but must be limited to such a movable press-block as was described, or its equivalent, in combination with such other block as was described, or its equivalent, united and operated as described, and for the purpose described. In order to understand this definition, it is necessary to refer to the specifications. The movable press-block described is put upon and connected with various other parts of the machine. There is, first, a bed-sill of the proper size. Upon this is placed an anvil of cast-iron. There is a raised solid block forming a part of the anvil, with its side shaped to the side of the rail, which is to be placed in it. Then upon the face of the anvil, and next to the raised block, with its side shaped as above, is put the movable press-block. It is attached to the anvil. It is worked by eccentric cams. It has its side next to the raised block, shaped also to hold the rail; the latter thus has the raised block on one side, and the press block on the other. This is the kind of press-block described, and this is the kind of other block described. It operates in this way: The piece of iron is prepared and heated; the rail is also heated in the fire, and is then swung round; the movable block brought against the rail, which is thus between the two as in the jaws of a vise, and there firmly held, with the crown of the rail above and resting on the blocks, until the welding or reforming process is completed. The purpose effected is the reparation of the rail. Now, it is clear that no true construction of this patent can be given, without connecting the claim as made, with the machine, and its purpose and mode of operation.

Therefore, while it is essential that the various parts claimed should be constructed so as to accomplish the purpose, it is also essential that the parts claimed should be connected with parts not specifically mentioned in the claim; for example with something to support the jaws of the vise as well as the blows given in the act of reparation of the rail. It is clear, therefore, the jaws as described and constructed cannot be separated from other parts mentioned in the specifications. If they are, they cease to be such a movable press-block and such other block described, which are the blocks covered by the patent. It follows, therefore, that what gives support to the blocks is an essential part of the machine, and that it is not precisely correct to say that the only function of the Cawood machine is to hold the rail while being mended. That is only a part of its function. We must go further, and add, it must be done substantially in the way described, and so as to accomplish the purpose mentioned. It was, therefore, supposed by the court, in the case of Turrill v. Illinois Cent. R. Co. [Case No. 14,270], viewing the machine as having its own peculiar form and mode of operation, that there was something in it which might be the subject of a patent, notwithstanding the angle-iron, bayonet, and Church machines. A writ of error was taken out, and finally abandoned, and the judgment of this court affirmed. These questions have been re-argued in this case; but, under the circumstances, it could scarcely be expected that the opinion of the court would be changed. Cawood does not, in terms, in his claim, make the support to the jaws a part of his claim, but it necessarily follows, from the two things, that he does claim in combination, in the manner described and set forth by him, that it is an essential part of the invention. One of the blocks is a raised part of the anvil; the other is attached to it and movable backward and forward, so as to let in and firmly clasp the rail. If we were to remove the part beneath, we should deprive the machine of one of its essential parts, and without which it would not be the machine described.

Some question has been made whether Cawood intended that the rail, in process of reparation, should rest as well upon the anvil as be clasped in the jaws of the blocks. There is nothing distinctly stated in the specifications to that effect, but there can be no doubt, I think, when fairly considering them in connection with the drawings, that such was supposed by him to be one of the incidents or results, and, perhaps, a necessary one to the successful operation of the machine. It would seem that in this way the rail would be more solidly planted, and, therefore, better prepared to receive the blow given in the act of repairing. It is insisted, on the part of the defense, that for the rail to rest on the anvil in the work of reparation is a positive injury, instead of a benefit, partic-

ularly in the case of what is called the "fish rail." The argument is that if the rest of the rail on the anvil is an element of the Cawood patent, then, whenever that ceases to be the fact, there is no infringement. And it seems that in several machines used by some of the defendants a part of the anvil has been chipped off beneath the rail, so that it no longer rests on the anvil. This, it is argued, deprives them of all that is new in the Cawood machine, and prevents them from being an infringement.

While I think the specifications treat the resting the rail upon the anvil as a part of its mode of operation, I do not consider that one of the elements or indispensable parts of the machine, nor, do I think, if enough of the anvil be removed to prevent the rail from resting on it, for that reason alone, it ceases to be the Cawood machine. And yet, it is clear, if the whole bottom support is removed, an essential part of the Cawood machine is gone, and there is nothing left, in effect, but a common vise. There might be instances between these two supposed cases where it would be difficult to determine whether the machine was a substantial equivalent of one of the old or of the Cawood machines. It would appear to be better, in order to accomplish the purpose Cawood had in view, that the rail should rest on the anvil, and it might not, and still it would possess, in many respects, the peculiar advantages of the Cawood machine; one of them, obviously, being the firmness of support given to the rail while in the act of being repaired. The fact that the machine, as intended by Cawood, has been used, and, by some of the defendants, several years, without special complaint, strengthens this view of the case. But even if what is added or taken away by the defendants is an improvement of the Cawood machine, it is still the machine so long as its essential characteristics remain the same.

On the whole, then, there is nothing in this case to prevent the operation of the Cawood patent, when fairly construed, and therefore it will be held valid. The main argument has been upon the validity of the patent. I shall refer the case to a master, with directions to report what machines used by the defendants infringe the patent of the Cawood machine, within the rules and principles here stated; also, what damages the plaintiff has sustained by such use. I adopt this practice in the present case for the reason that while the rules laid down dispose of most of the questions which relate to infringement, there are others of some difficulty which I leave to be disposed of at the coming in of the master's report upon exceptions or otherwise.

The above opinion applies not only to Mr. Turrill's suit against the Illinois Central Railroad Company, but also to four other suits against the following companies: The Chicago, Burlington and Quincy R. R. Co.; the Michigan Southern and Northern Indiana R. R. Co.; the Chicago and Alton R. R. Co.; the Pittsburgh, Ft. Wayne and Chicago Railway Co.; all being founded upon essentially the same state of facts, and involving the same principles. These five cases were, by, agreement of counsel, heard together, and in accordance with the above opinion were referred to Henry W. Bishop, Esq., master in chancery. The master, on the 7th of November, 1872, reported that the defendants used seven machines which infringed the plaintiff's patent, and reported the damages as against the several defendants at a total of $1,549,732.68.

To this report the defendants filed thirty-two exceptions, which came on to be heard before DAVIS, Circuit Justice, and DRUMMOND, Circuit Judge, in July, 1873, when the report was sustained except as to the Bain machine, and reference made to the master for the proper reduction. [See Case No. 14,272 and note.] The master, on the 22nd of October, 1873, reported that the Illinois Central and the Michigan Southern and Northern Indiana R. R. Co. were the only ones which used the Bain machine, and allowed them deductions of $114,489.68 and $103,927.53, respectively, making the total amount against the five companies $1,331,315.47. To this report the several railroad companies filed further exceptions. [Case unreported.]