## SHARPLES et al. v. MOSELEY & STODDARD MANUF'G CO.

(Circuit Court, D. Vermont. July 2, 1896.)

1. PATENTS—INFRINGEMENT SUITS—PARTIES.
A patentee and his exclusive oral licensee, who have, between them, the entire right to the patent, may together maintain an infringement suit against a third party.

2. SAME—REISSUE—CENTRIFUGAL MACHINES.
The Sharples reissue, No. 11,311 (original 442,461), for a centrifugal separator, construed, and *held* valid; and also *held* infringed, as to claims 4 and 5, by a machine made under patent No. 484,685.

3. SAME—CENTRIFUGAL MILK-TESTING APPARATUS.
The Sharples patent, No. 458,194, for a centrifugal milk-testing apparatus, *held* valid as to claim 3, and said claim *held* infringed by a machine made under patent No. 484.685.

This was a suit in equity by Philip M. Sharples and D. P. Sharples against the Moseley & Stoddard Manufacturing Company for alleged infringement of two patents relating to centrifugal machines.

Charles Howson, for plaintiffs.
E. B. Stocking, for defendant.

WHEELER, District Judge. This suit is brought for alleged infringement, in the same machines, of reissued patent No. 11,311, the original of which was No. 442,461, for a centrifugal separator, granted to the two plaintiffs, and original patent No. 458,194, for a centrifugal milk-testing apparatus, granted to one of the plaintiffs, of whom the other is an exclusive oral licensee. Question is made about the right to maintain this suit under these circumstances. An oral license, as such, seems to be valid. Walk. Pat. § 303. And, however that may be, the entire right to both patents is in the plaintiffs, between them, without any outstanding interest to menace the defendant in any other suit. This seems to be sufficient.

Both patents relate to machines which separate compound fluids by change of temperature and whirling. The specification of No. 11,311 says:

"The centrifugal vessel is suspended in a casing, and is operated directly by the motive power; a driving spindle being dispensed with and the balancing of the vessel only being required. The motive power is applied at the outer wall of the vessel, and is preferably a heated jet or jets (as of steam), which, while driving the vessel, at the same time, by contact with said outer wall, imparts to the heavier constituent of the compound liquid (as milk) undergoing separation an increased heat, which materially assists in hastening the complete separation of the lighter constituent (cream) without materially heating the latter."

"Our machine may be operated directly by the action of any escaping jet, but we prefer to use generally either steam, or some heavier fluid projected thereby—First, because the great speed at which vessels of this character are rotated necessitates the use of a jet of high velocity; and, secondly, because of the effect which the heat thus applied has in accelerating and completing the separation of the cream from the milk."

"The method of suspending and operating the separator vessel directly, as described, has the very great advantage of necessitating but one balancing, whereas, when a driving spindle is used, whether operated by a steam jet or otherwise, not only must both the spindle, with its attachments, and the vessel, be placed and kept in balance, but bearings must be used, which are a great source of trouble. The extremely high speed at which these vessels revolve makes the perfect balancing of them a necessity, and the accomplishment of this is greatly simplified by employing but one revolving body, and but one step, as in our construction."

## The claims of this patent here involved are:

"(1) The improvement in the process of creaming milk by centrifugal force, which consists in simultaneously changing the temperature of the rotating compound liquid to facilitate the separation of the constituent parts, substantially as set forth."

"(4) In a centrifugal machine, a separator vessel, suspended upon a fixed bearing, located substantially in the perpendicular passing through the center of gravity of the loaded vessel, in combination with means for applying rotating power directly to said vessel, substantially as set forth.

"(5) In a centrifugal machine, a rotary separator vessel, pivotally suspended substantially as described, in combination with a nozzle or nozzles located at the periphery of the vessel, and adapted to apply a jet, as of steam, thereto, whereby said vessel is directly rotated, and the jet utilized to affect the temperature of the rotating liquid, substantially as and for the purpose set forth."

The specification of No. 458,194 says:

"Fig. 1 is a sectional elevation of the complete apparatus,—one side showing the position of the testing vessels during rotation; the other, while at rest."

"Secured to the plate by means of ears and bolts is an annular casing, open towards the center, and provided with vanes or buckets projecting from its peripheral wall."

"Rotation is effected directly by the action of a steam jet from a nozzle located in close proximity to the wings of the casing, on which the jet impinges. After five minutes (more or less) of rapid rotation, the separation of the fat will be complete; the contents of the vessel being maintained during this time at a high temperature by the same steam which effects the rotation, and which enters the casing, F, and keeps the vessels in an atmosphere of exhaust steam."

The claim now involved is:

"(3) In a milk-testing apparatus, the combination, with a rotary frame having independently hinged pockets to receive the testing vessels, of an annular casing, F, fixed to said frame outside of said pockets, and a steam nozzle located in close proximity to the exterior of said casing, the space surrounding said pockets being in communication with the outside of said casing, whereby the contents of the vessel are heated by the operating steam, substantially as set forth."

The reissue is said to have been unwarrantable, as an expansion of the original, and void. The fourth and fifth claims, however, seem to stand substantially as in the original, and to be valid. The defendant's machine is made according to subsequent patent No. 484,685, in the granting of which claims were rejected in avoidance of the plaintiffs' patents. It is a milk-testing apparatus, and has an outer stationary casing, covering the whole whirling apparatus, suspended upon a fixed bearing in the perpendicular of the center of gravity of the load, through which a nozzle takes a jet of steam against buckets on the periphery of the rotary apparatus, whirling thereby vessels, as the upright part of the casing, F, of the plaintiffs' patent, No. 458,194, does, and the vessels are heated by the operating steam. The principal difference appears to be that the defendant's casing is stationary, covers the whole whirling apparatus, and re-

tains the steam coming from the jet, while the casing, F, of the patent, is an outer part of the whirling apparatus, partly covers the rest, and retains the steam, or other power, coming from the jet. The first claim of No. 11,311, which is expressly for a process of creaming milk, does not appear to be infringed by the operation of a machine for testing milk, which is a different process. The vessels of the defendant's machines are separator vessels, although used in testing milk; and the machines appear to have all the elements of the fourth and fifth claims of this patent, operating substantially as they do. An outer casing is said to be always used over, and to be understood as belonging to, such machines, and therefore to be taken into a patent for them, as a place in which the patented parts belong. This would probably be true if the patentee has not limited the scope of this latter patent by showing Fig. 1 as of a complete apparatus. Loom Co. v. Higgins, 105 U. S. 580. The inclusion of a part as a casing of apparatus expressly referred to as complete seems to be equally an exclusion of any other casing to complete it. To read an outer casing, like the defendant's, into the patent, against this expression, is difficult, and so seemingly not allowable in favor of the patent. But, however this may be, the periphery of the defendant's rotary frame receives the jet and operates the machine as the upright part of the casing, F, of this patent does; and the defendant's machine has all the other parts of the combination of the third claim of the patent, operating in the same way. So the defendant makes use of all the parts of the combination of this third claim, although not the whole of the casing, F, and thereby appears to infringe this claim. Turrill v. Railroad Co., 3 Biss. 72, Fed. Cas. No. 14,271. Decree for plaintiffs as to fourth and fifth claims of No. 11,311, and the third claim of No. 458,194.