ST. LOUIS STREET FLUSHING MACH. CO. et al. v. SANITARY STREET FLUSHING MACH. CO.

(Circuit Court of Appeals, Eighth Circuit.  April 27, 1910.)

No. 3,142.

1. PATENTS (§ 209*)—LICENSES—VALIDITY.

The facts that a license to use a patented device is oral and that it was granted after the application, but before the issuance of the patent, do not render it invalid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 300; Dec. Dig. § 209.*]

2. PATENTS (§ 212*)—VIOLATION OF LIMITED LICENSE—INFRINGEMENT.

A limited license under a patent conveys only the rights defined therein, and if the licensee makes any other or different use, either as to time or place, than that authorized by the license, he becomes an infringer, and his limited license is no justification.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 312; Dec. Dig. § 212.*]

3. PATENTS (§ 328*)—CONSTRUCTION AND INFRINGEMENT—STREET WASHER.

The Murphy patent, No. 736,135, for an improved street washer, is not a pioneer patent, but covers a combination of elements previously in use, and, while valid, is not entitled to a broad construction; but the range of infringing equivalents must be limited to those which perform the same functions in the same way. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

Suit in equity by the Sanitary Street Flushing Machine Company against the St. Louis Street Flushing Machine Company, William Ratican, Stephen Joseph Ratican, and James C. Wilson. Decree for complainant, and defendants appeal. Reversed.

Henry W. Allen and James A. Carr, for appellants.

James L. Hopkins (Alfred A. Eicks and John M. Holmes, on the brief), for appellee.

Before ADAMS, Circuit Judge, and RINER and W. H. MUNGER, District Judges.

RINER, District Judge. This was a suit brought by the Sanitary Street Flushing Machine Company, hereafter called the complainant, against the St. Louis Street Flushing Machine Company, Wm. Ratican, Stephen Joseph Ratican, and James C. Wilson, hereafter called the defendants, for the infringement of letters patent No. 736,135, issued to Thomas Michael Murphy, August 11, 1903, for an improved street washer. There was a bill, an amended bill, and a supplemental bill filed in the case by complainant. The amended bill charged the infringement of two patents issued to Murphy, viz., Nos. 736,134 and 736,135; and by the supplemental bill it was sought to compel an assignment by the defendant company to the complainant of the Wilson patent, No. 777,053. The supplemental bill also set up a limited license to William Ratican, one of the defendants, in relation to the manufacture and use of nine certain wagons, designated in the

record as the "nine London wagons." Before the proofs were taken, counsel for the complainant withdrew the charge of infringement as to letters patent No. 736,134, as well as all relief sought in regard to the Wilson patent, No. 777,053, thus leaving for the consideration of the court only the questions relating to patent No. 736,135.

The claims of the patent are as follows:

"1. In ·a street-washing machine, the combination of a movable frame, a water-tank and an air-tank carried thereby having communication with each other, means for regulating the connection between the tanks, an air-inlet for the water-compartment, a water-inlet, a discharge-valve, a trap interposed between the tank and the discharge-valve provided with a sediment-chamber having an opening for cleaning the same and extending below the tank and the discharge-valve.

"2. In a street-washing machine, the combination of a movable frame, a water-tank and an air-tank carried thereby having communication with each other, means for regulating the connection between the tanks, an air-inlet for the water-compartment, a water-inlet, a discharge-valve, a trap interposed between the tank and the discharge-valve provided with a sediment-chamber having an opening for cleaning the same and extending below the tank and the discharge-valve, and means for controlling the discharge-valve located alongside the driver's seat.

"3. In a street-washing machine, the combination of a movable frame, a water-tank and an air-tank carried thereby having communication with each other, means for regulating the connection between the tanks, an air-inlet for the water-compartment, a water-inlet, a discharge-valve, a trap interposed between the tank and the discharge-valve provided with a sediment-chamber extending below the tank and the discharge-valve and having an opening for cleaning the same, means for controlling the discharge-valve located alongside the driver's seat, and a pressure-gauge located in the same position."

In view of other patents offered in evidence we cannot assent to the contention of counsel for complainant that the patent in suit is a "basic or pioneer patent and entitled to be construed accordingly," but rather a patent for a combination of elements already in use; and, this being true, the patent is not entitled to a broad and liberal construction, but, on the contrary, the range of infringing equivalents must be restricted to those which perform the same functions in the same way. Sargent v. Lock Co., 114 U. S. 63, 5 Sup. Ct. 1021, 29 L. Ed. 67; Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493, 29 L. Ed. 723; Carter Mach. Co. v. Hanes et al. (C. C.) 70 Fed. 859. The patent in suit is but a development by the patentee of his own prior patent, No. 673,842. The file wrapper shows that the patent in controversy was issued August 11, 1903, to Thomas M. Murphy of St. Louis, Mo., assignor of one-half to William Ratican of St. Louis, Mo. The original application filed was for an improvement in pressure-tanks and contained four claims; each claim relating to a pressure-tank. August 13, 1901, the Patent Office rejected all of the claims because of patents theretofore issued, viz.: Daughtrey, No. 200,376, on February 19, 1878; Balf, No. 645,159, on March 13, 1900; Kelso, No. 674,701, on May 21, 1901; Ollard, No. 569,883, on October 20, 1896. January 30, 1902, the applicant amended his specifications and substituted five new claims in the place of those previously submitted. February 20, 1902, the Patent Office again acted on the application and rejected the claims as in conflict with Van Gaasbeek, No. 296,488, issued April 8, 1883, and called attention to the patent issued to Mur-

phy, No. 673,842, on May 7, 1901. February 26, 1902, the applicant amended by canceling claims 1 to 4 and adding three new claims. On March 21, 1902, the examiner rejected all of the claims because they conflicted with prior patents. April 11, 1902, the applicant amended his application by canceling all the claims and substituting therefor two new claims. In May, 1902, the examiner rejected both of these claims. On April 14, 1903, the application was again amended by erasing the word "pressure-tank" in the preamble, and inserting in lieu thereof "street washers," and by erasing the specification and substituting therefor a new specification and claim. In the new specification the object of the invention is stated as follows:

"The object of the invention is to provide means for enabling the driver or operator of the machine to ascertain the pressure within the machine while it is in motion, for the purpose of preventing its reduction below an effective point, without leaving his seat or having to turn around in his seat in operating the machine; for instance, in crowded thoroughfares. The further object of the invention is to provide, in connection with the machine, a sediment-collecting trap for collecting and removing the sediment in a machine of this class, which otherwise would render the operation of the discharge-valve inoperative."

The amendment contained four claims, but two of them were erased before filing, so that only two claims were filed. On April 15, 1903, the applicant filed an addition to the substituted specification filed April 14, 1903, correcting certain errors appearing therein, and added a third claim, and on April 28, 1903, the application was allowed. The third claim does not, as we view it, require extended notice. Its characteristic feature is that the pressure-gauge shall be located "alongside the driver's seat." The patent, we think, emphasizes this location as the primary object of the invention, and as none of the defendants' machines show a pressure-gauge "alongside the driver's seat," or in such a position that the driver can see it "without having to turn around," we think there can be no infringement of this claim.

The distinguishing feature of claims 1 and 2 is:

"A trap interposed between the tank and the discharge-valve provided with a sediment-chamber having an opening for cleaning the same and extending below the tank and the discharge-valve."

·The purpose of this device, as stated in the patent, is—

"for collecting and removing the sediment in a machine of this class which otherwise would render the operation of the discharge-valve inoperative. The functions of the sediment-chamber are (1) to collect the sediment and (2) to remove the sediment from time to time to prevent its choking the discharge-valve and thus rendering it inoperative."

To accomplish this result there must be a depression extending below the tank and the discharge-valve and an opening through which the sediment may be removed. This opening is referred to in the claims now being considered as "an opening for cleaning the same." The "opening for cleaning the same" mentioned in these claims necessarily refers, we think, to the large opening at the bottom of the depression constituting the sediment-chamber. The record shows that this sediment-chamber was used by the patentee and others originally for the purpose of containing a float-valve, and that it was not in

serted in the claims of the patent now in suit until the amendment of April 14, 1903.

As already suggested, to constitute a sediment-chamber there must be a depression which the claims refer to as "extending below the tank and the discharge-valve." In the defendants' present construction a horizontal pipe is screw-threaded into an ordinary elbow or pipe-fitting, and the slight space at the end of the pipe where it is screwed in cannot be said to be a sediment-chamber, certainly not one "extending below the tank and the discharge-valve," and is not, therefore, an infringement of either of these claims.

This leaves for consideration only the "nine London wagons," and some eight or ten wagons constructed by the defendants which were equipped with T-joints. The record shows with respect to the wagons equipped with T-joints that the vertical portion of this construction was practically of the same diameter as the horizontal portion, whereas it is shown by the patent in suit that the cross-sectional area of the sediment-chamber is about nine times the cross-section of the horizontal pipe. And it further appears that in the wagons equipped with T-joints no provision was made for slowing down the velocity of the flow at the only point where sediment could accumulate.

It is to be borne in mind that the second object of the patentee's invention was to provide for the removal of the sediment from the sediment-chamber; the primary object being to protect the discharge-valve. To accomplish this second object the patentee provided a large hole at the bottom of the sediment-chamber through which sediment could be removed. Aside from the "nine London wagons," the T or three-way coupling used by the defendants on these eight or ten wagons is the only construction of the defendants as shown by the record that can answer the description of the claims in this patent, and there is no evidence that the T-joints used on the wagons thus equipped were ever opened for the purpose of removing sediment or for any other purpose; hence this construction did not infringe any of the claims of the patent. Both the substance and function of the invention must be embodied in the structure to constitute an infringement. We think the evidence establishes that the "nine London wagons" were constructed by the defendant Ratican under and pursuant to a limited license granted by Sutter, complainant's assignor, to Ratican to make these wagons upon condition that they were not to be used within the United States. The complainant introduced evidence showing a conversation to that effect, and this is supported by the receipt given by Ratican after the machines were returned in which he said:

"I also agree that these machines will not be used within the limits of the United States."

The license was oral, it is true; but that is no objection to its validity. Sharples v. Moseley & Stoddard Mfg. Co. (C. C.) 75 Fed. 595; Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504. Neither does the fact that the license was granted after the application was filed, but before the issuance of the letters patent, render it invalid. Brush Electric

Company v. California Electric Company, 59 Fed. 945, 3 C. C. A. 368, and cases there cited.

As already indicated, our examination of the record leads us to the conclusion that the invention deals with an art in its advanced stage; but it is more than a mere aggregation, which, of course, is not patentable. Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749; Double Pointed Tack Co. v. Two Rivers Mfg. Co., 109 U. S. 117, 3 Sup. Ct. 105, 27 L. Ed. 877; Stephenson v. Brooklyn R. R. Co., 114 U. S. 149, 5 Sup. Ct. 777, 29 L. Ed. 58. We think the invention may be said to be useful within the meaning of the statute, and, that being true, the rule is that the court would not be justified in declaring the patent void. Seymour v. Osborne, 11 Wall. 516, 549, 20 L. Ed. 33; Wilbur v. Beecher, 2 Blatchf. 132, Fed. Cas. No. 17,634; Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939; Gibbs v. Hoefner (C. C.) 19 Fed. 323.

As to the "nine London wagons," the contention of the defendants that the use of these wagons by them after their return to the United States was not an act of infringement, but a breach of contract, cannot be sustained. It is, we think, the general rule in patent cases that a limited license conveys only the rights defined therein, and that if the licensee makes any other or different use, either as to time or place, than that authorized by the license, he becomes an infringer, and his limited license is no justification. Heaton-Peninsular Button Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728. As the defendants used these "nine London wagons" in the United States in violation of the license, they must account therefor to the plaintiffs.

Some other questions are raised by counsel in their briefs, which have all been carefully considered; but in the view we have taken of the case it becomes unnecessary to discuss them.

The decree of the Circuit Court is reversed, with directions to enter a decree sustaining the patent and directing an accounting as to the "nine London wagons" only.