## WESTINGHOUSE ELECTRIC & MFG. CO. v. CUTTING & WASHINGTON RADIO CORPORATION.

(Circuit Court of Appeals, Second Circuit. December 10, 1923.)

No. 172.

1. **Patents ⚭212(1)—License held not to prevent licensee from having apparatus manufactured by another.**
A patentee's grant of a "nonexclusive, nontransferable license to manufacture the apparatus, and to sell the apparatus of the licensee's manufacture," *held* not to prevent licensee from having the apparatus manufactured for itself by some one else.

2. **Patents ⚭305—Injunction held likely to cause confusion.**
Where one granted a nontransferable license to manufacture patented apparatus, and sell apparatus of its own manufacture, was having the apparatus manufactured for it by a third person, an injunction, so far as it restrained the sale of apparatus not of licensee's manufacture, was likely to cause confusion, and should be modified by striking out such provision.

3. **Patents ⚭212(1)—License held not to permit sale through intermediary.**
One given a nontransferable license to manufacture and sell apparatus to certain classes of persons could sell to such classes through his own agents or employees, but could not go beyond that to distributors, jobbers, and dealers.

Manton, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Westinghouse Electric & Manufacturing Company against the Cutting & Washington Radio Corporation. From a decree granting a preliminary injunction, and from an order refusing

---

⚭For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to reform the decree, defendant appeals. Modified, with instructions to enter decree.

The bill alleges that plaintiff is a Pennsylvania corporation and defendant is a New York corporation; that defendant has committed and threatens to commit acts of infringement; that plaintiff is the sole owner of the Armstrong patent which has been adjudicated valid. Then follow the usual allegations as to irreparable injury and the usual prayer for relief.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis and Willis H. Taylor, Jr., both of New York City, of counsel), for appellant.

Charles Neave and Stephen H. Philbin, both of New York City, for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The essential facts may be briefly stated. The patent of which the plaintiff is owner is the well-known Armstrong patent, fully discussed in Armstrong v. De Forest Radio T. & T. Co. (D. C.) 279 Fed. 445, and (C. C. A.) 280 Fed. 584.

On July 7, 1920, which was prior to the acquisition of the patent by plaintiff, Armstrong and defendant entered into a license agreement. Thereafter this license was duly assigned by Armstrong to plaintiff. The license agreement, supra, provided, inter alia:

"(1) It is agreed that, wherever the words 'the apparatus' are used in this agreement, they are intended to cover and include all apparatus in which the regenerative circuit is embodied or employed in communication with, or for use with, electron discharge tubes, whether for receivers or transmitters or generators."

"(3) The licensor hereby grants to the licensee a nonexclusive, nontransferable license to manufacture the apparatus and to sell the apparatus of the licensee's manufacture, as follows: (a) To radio amateurs for use in radio amateur stations; (b) to radio experimenters and scientific schools or universities, for use in experimental and scientific school or university radio stations; (c) to purchasers in the United States for use in their own noncommercial land radio stations; i. e.; stations used for the private purposes of their owners, and which do not receive or transmit for others commercial messages for money or other valuable consideration."

Defendant, at the time when the license was granted, did not have a manufacturing plant of its own, equipped to manufacture the apparatus. After unsatisfactory experiences with two concerns, defendant arranged for the manufacture of the apparatus on a cost plus basis by Automatic Electrical Company, well-known manufacturers of automatic telephone apparatus. The manufacture is supervised by defendant's representatives, and the work is done in accordance with defendant's specifications. It will be noted that, under paragraph 1 of the license, "apparatus" covers receivers as well as transmitters. Of course, since the growth of broadcasting, the important business is in receiving sets, and these have been sold by defendant through jobbers and distributors.

[1] 1. In construing the nonexclusive, nontransferable license to manufacture, we need not pause to consider fine distinctions. The

intent plainly was to prevent defendant from transferring the right to manufacture to anyone else. But the language does not imply that defendant could not have the apparatus manufactured for itself by someone else. The language used is not to be construed as restricting defendant to a shop right. The argument of plaintiff, in effect, is that, if defendant can be restrained from having these articles manufactured in some factory other than its own, it can thereby reduce defendant's output. We see no warrant for such a construction of this part of the license. We think, however, that one of the purposes of the agreement, in this regard, was to impose responsibility upon the licensee for the character of the work done, so that the business of the licensor would not be injured by the production of inferior apparatus. That responsibility has been met thus far in this case by defendant's arrangement with a competent manufacturer and defendant's supervision.

[2] So much of the decree below as restrained defendant from selling and offering for sale "any such radio receiving sets or apparatus not of defendant's manufacture" should be stricken out, as likely to lead to confusion. If defendant, directly or through some manufacturer for it, should manufacture inferior apparatus, that situation can be dealt with, if and when it arises. No such situation now exists.

[3] 2. We see no occasion for elaborate discussion of the meaning of section 3 of the license. It is as plain as words can make it, and the context fully supports the particular words. A nonexclusive, nontransferable license to sell to three carefully defined classes of buyers cannot be extended to mean that the licensee may make any sale intermediate between him and the purchaser. He can, of course, sell through his own agents or employees; but when he goes beyond that, to distributors, jobbers, and dealers, he is clearly violating the fundamental purpose and intent of the agreement and becomes an infringer. Aspinwall Mfg. Co. v. Gill (C. C.) 32 Fed. 697; St. Louis Street Flushing Mach. Co. v. Sanitary, etc., Co., 178 Fed. 923, 103 C. C. A. 565, certiorari denied 219 U. S. 588, 31 Sup. Ct. 471, 55 L. Ed. 348; General Electric Co. v. Continental Lamp Works (C. C. A.) 280 Fed. 846, 851. What Armstrong arranged, or how he acted, with other licensees, is, of course, immaterial. He or plaintiff might have given a broad license to A., and yet closely restricted B.

Finally, it is sought to put a different meaning on the language of the license agreement, because of an alleged practical construction of the parties, evidenced by at most two incidents. In view of the unambiguous language of the contract, we are unable to discover in this record any practical construction which will aid appellant.

The decree and order should be modified, as indicated, without costs, and the District Court is instructed to enter a decree in accordance with this opinion.

MANTON, Circuit Judge (dissenting in part). I agree that the license agreement gives the right to manufacture as set forth in Judge Mayer's opinion. But why restrict the sale to the efforts of its own agents or employees? Why not jobbers and dealers if only the appellant's manufactured products are sold? The license agreement grants a nonexclusive, nontransferable license to manufacture

the apparatus and to sell the apparatus of the licensee's manufacture (1) to radio amateurs for use in radio amateur stations; (2) to radio experimenters and scientific schools or universities, for use in experimental and scientific school or university radio stations; (3) to purchasers in the United States for use in their own noncommercial land radio stations; i. e., stations used for the private purposes of their owners and which do not receive or transmit for others commercial messages for money or other valuable consideration. The use intended by this agreement is other than commercial use, namely, use for amateurs or scientific men only. This is the limit which is placed upon the licensee's grant to sell. There is no difference between an agent or jobber who sells appellant's product to that trade. Any disposition of the appellant's product through agency to this trade is implied in the license. The appellee is as fully protected if the sale is through a jobber as through the agent of the appellant. If the intention of the contract was to permit the appellant to manufacture, it was likewise intended to permit him to sell to the named or designated trade through a legitimate agency, and dealers and jobbers may be so classified providing they are restricted to sell to the trade referred to in the license agreement. Foster Hose Supporter Co. v. Taylor Co., 191 Fed. 1003, 111 C. C. A. 667; Walker on Patents, p. 374; Duff v. Gilliland, 139 Fed. 16, 71 C. C. A. 428; Montross v. Mabie (C. C.) 30 Fed. 234.

I think the appellant should be relieved in full of the order below.