**RADIO-CRAFT CO., Inc., et al. v. WESTINGHOUSE ELECTRIC & MFG. CO.**

(Circuit Court of Appeals, Third Circuit. March 2, 1925. Rehearing Denied September 11, 1925.)

No. 3065.

**1. Patents ⚖=211(1)—License held to limit right of licensee to manufacture to its own plant and to sell to users definitely specified.**

A grant of a "nonexclusive, nontransferable license to manufacture the apparatus and to sell the apparatus of the licensee's manufacture" to specified classes of users *held* to limit the licensee's right to manufacture to its own plant and employees and to make its sales direct to the users specified.

**2. Contracts ⚖=143—Silences in contract cannot destroy plain, positive provisions.**

Silences on other, though related, matters in a contract cannot be used to destroy its plain, positive provisions.

**3. Patents ⚖=211(1)—Unrestricted license to make, use, or sell implies authority to contract for manufacture.**

An unrestricted license to manufacture and use or sell implies authority to contract with others to supply what may be lawfully used or sold.

**4. Corporations ⚖=225—Stock control acquired for purpose of making the corporation a mere agency of another will not prevent placing responsibility on owning corporation.**

Where stock control has been resorted to, not for the purpose of participating in the affairs of the corporation in the normal and.

usual manner, but for the purpose of controlling and using it as a mere agency or instrumentality of the owning company, courts will look through the screen of separate corporate control and place the responsibility where it actually belongs.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit in equity by the Westinghouse Electric & Manufacturing Company against the Radio-Craft Company, Inc., and another. Decree for complainant, and defendants appeal. Affirmed.

For opinion below, see 291 F. 169.

Thomas G. Haight, of Jersey City, N. J., Samuel E. Darby, Jr., of New York City, and Edward J. O'Mara, of Jersey City, N. J., for appellants.

Charles Neave, Stephen H. Philbin, and James J. Cosgrove, all of New York City, for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and LYNCH, District Judge.

DAVIS, Circuit Judge. Edwin H. Armstrong was the patentee and owner of United States letters patent No. 1,113,149, for the use of regenerative circuit, with electron discharge tubes, in radio apparatus. On September 20, 1921, he granted a license under the patent to the Radio-Craft Company, Inc., to manufacture and sell radio apparatus. The controversy before us arose over the meaning of paragraph 3 in the license agreement. It provides that:

"The licensor hereby grants to the licensee a nonexclusive, nontransferable license to manufacture the apparatus and to sell the apparatus of the licensee's manufacture, as follows: (a) To radio amateurs for use in radio amateur stations; (b) to radio experimenters and scientific schools or universities, for use in experimental and scientific school or university radio stations."

[1] The Westinghouse Company, assignee of Armstrong, charges that the licensee has infringed the patent, in that it purchased and has had manufactured for it radio apparatus which it has sold to distributors, jobbers, and dealers, and not to radio amateurs, experimenters, etc. The defendants contend that paragraph 3, as interpreted by the light thrown upon it by other parts of the agreement, gives the Radio-Craft Company the right to have others manufacture apparatus for it and to sell it through the usual channels of the trade, just so the apparatus finally reaches only radio amateurs, etc. **It is**

therefore necessary to construe the agreement.

Must the Radio-Craft Company itself manufacture and sell the apparatus of its manufacture directly to radio amateurs, radio experimenters, and scientific schools or universities, or may it have the apparatus manufactured for it and sell it through the usual channels to distributors, jobbers, and retail dealers, who in turn sell to radio amateurs, etc.?

Paragraph 3 in terms permits sales to radio amateurs, to radio experimenters, and scientific schools or universities, without reference, express or implied, to other possible purchasers. If the licensor was interested only in the uses to which the apparatus was to be put, and intended to grant the right to sell to distributors, jobbers, and dealers, who in turn would sell only to radio amateurs, etc., the failure to use some language in this paragraph, indicating his intention, is inexplicable. What the license does not expressly, or by fair implication, permit, it prohibits. In other words, it left in Armstrong the whole market, except that to the three classes mentioned in paragraph 3.

Considering this paragraph alone, it is clear that the parties intended to restrict and did restrict the licensee's vendees to these three classes. The licensee, however, may use agents or employees or other means to effect its sales. The business methods of the licensee, how it may do its selling, are not before us. The language used in this paragraph is clear and simple, and in our judgment, not only justifies, but forces, the conclusion here reached. Do other parts of the agreement render this conclusion untenable?

The defendants say that the reservation, in paragraph 4, of the right to determine whether or not a sale of apparatus by the licensee comes within the category of licensed uses, set forth in paragraph 3, is a modification of the restriction as to purchasers. We do not think that the language supports such construction. The licensor was interested, not only in the purchasers, but also in the uses for which the apparatus was sold, and to which it was to be put. If a doubt arose as to those uses, he reserved the right to determine that question for himself. It does not follow, because express mention was not here again made of the restriction as to purchasers, that the licensor intended to broaden the restriction in paragraph 3. If this had been the intention of either party, some language expressive of such fact would have been used.

7 F.(2d)—28

[2] Again defendants say that, because the licensee covenanted in paragraph 5 to pay the licensor 5 per cent. of its selling price of the apparatus for the uses set forth in paragraph 3, and covenanted not to manufacture or sell any apparatus to purchasers for purposes other than those uses, and did not also there covenant not to sell to persons other than those set out in that paragraph, it is reasonable to presume that Mr. Armstrong was concerned with the use to which the apparatus was to be put, rather than the persons to whom the manufacturer directly sold, and he must therefore have· intended to broaden the restriction, and grant the right to sell through the usual trade channels. They further say that the failure to require the names of purchasers in the returns provided for in paragraph 6, while the quantity and description of the apparatus sold was required to be listed, indicates an intention to permit sales to others than those expressly named in (a) and (b) of paragraph 3.

The weakness of these arguments is that they are unnecessary presumptions, based upon silence, which cannot destroy plain, positive provisions of the agreement. If either party had in mind what is now urged, it is reasonable to assume that some language expressly indicating that fact would have been used. It is difficult to. see how the licensee could sell apparatus to distributors and pass legal title to it, and then assure the licensor that the apparatus would be resold only to radio amateurs, etc., without making any express provision for such transactions in. the agreement, or without making any reference whatever to such a plan. Whether or not such a provision could be made legally effective, the significant fact is that the agreement contains nothing, except by strained construction· and illogical and unnecessary inference, to indicate that the parties had in mind such an arrangement, and we think that the language does not imply one.

Defendants also urged that the words "billed out," as used in paragraph 6, are applicable to sales to the trade generally, and not to individual purchasers, and so justify their contention that sales may be made to others than the three classes mentioned. But these words are just as applicable to apparatus sold to radio amateurs as to distributors. Apparatus to one or many may be "billed out," whether the sale comprises little or much. In any event, those words were used to define what constituted a sale within the meaning of the agreement, and we do not think that any persuasive argument one way or the other can be based upon their use.

[3] The license granted the right to manufacture and sell "the apparatus of the licensee's manufacture." Does this authorize the licensee to have the apparatus manufactured for it by others, or must it manufacture in its own plant by its own employees? It is the general rule.that an unrestricted license to manufacture and use or sell implies authority to contract with others to supply what may be lawfully used or sold. Johnson Railroad Signal Co. ·v. Union Switch & Signal Co., 55 F. 487, 5 C. C. A. 204; Marconi Wireless Telegraph Co. of America v. Simon (D. C.) 227 F. 906. In the last case cited, Judge Hough said: "A licensee to make and use is not (in the absence of specific language in his license) limited to making with his own hands, in his own shop, or by his own employees.·. He may employ, procure, or contract with as many persons as he chooses to supply him with that which he may lawfully use, provided such conduct does not change his relation to the licensor." But in the case at bar, the license could not be transferred or assigned. The restriction of sales to the "apparatus of the licensee's manufacture" has some bearing on the question of manufacture. If the licensee could employ others to supply it with the manufactured apparatus, it could not sell that apparatus, and so would have it on its hands. This could not have been the intention of the parties. The limitation of sales to the apparatus of the licensee's manufacture shows, in our opinion, that it was the intention that the licensee should have the apparatus manufactured in its own plant and by its· own employees. We agree with Judge Learned Hand, then of the Southern District of New York, who said: "I can interpret the language only as meaning that the construction and assemblage of the parts should be done by the licensee's own employees and in its own factory. Anything else would be, I think, a casuistical interpretation to put upon words which are usual and clear." The Circuit Court of Appeals for the Second Circuit did not agree with Judge Hand, but we are constrained to think that he was right. Westinghouse Electric & Manufacturing Co. v. Cutting & Washington Radio Corporation, 294 F. 671.

[4] The evidence indicates that the Radio-Craft Company was a mere instrumentality of the De Forest Company, which acquired the stock of the former company for the purpose of using that corporation as a cover for its own transactions. The De Forest

Company supplied from its own employees officers for the Radio-Craft Company and completely dominated that company. Consequently the purported acts of the Radio-Craft Company are chargeable to the De Forest Company, which is using the name of the Radio-Craft Company in order to be "fully covered on this patent situation" as its vice president wrote. Where stock control has been resorted to not for the purpose of participating in the affairs of the corporation in the normal and usual manner, but for the purpose of controlling the company, so that it may be used as a mere agency or instrumentality of the owning company courts will look through the screen of separate corporate control and place the responsibility where it actually belongs. Southern Realty Inv. Co. v. Walker, 211 U. S. 603, 27 S. Ct. 211, 53 L. Ed. 346; Chicago, Milwaukee & St. Paul Railway Co. et al. v. Minneapolis Civic Association, 247 U. S. 490, 38 S. Ct. 553, 62 L. Ed. 1229; Sudduth v. Storm King Coal Co. (C. C. A.) 268 F. 433; Gulf, etc., Railway Company v. Citris Service Co. (D. C.) 281 F. 214. Before litigation was started, and the defendants became imbued with the spirit of advocacy, they were of the opinion that the agreement did not permit them to do what they now urge it does permit. On June 13, 1921, the Radio-Craft Company wrote to Armstrong's counsel and said:

"Referring to our license agreement under the Armstrong regenerative patent, No. 1,-113,149, which was signed September 29, 1920, beg to advise that we were under the impression that this license allowed us to sell radio apparatus to the United States government and to industrial companies for private communication purposes where money is not paid for the messages transmitted. Upon investigating this question, we find that our license covers sales only to amateurs and experimenters, brought out in paragraph 3 and classified under classes A and B."

In our opinion, the intention of the parties is clearly expressed in the agreement. It contains no real ambiguity. There is no allegation in the pleadings, and there is no contention here, that there was accident, fraud, or mutual mistake in the agreement. It follows that the court was justified in excluding evidence to clear up alleged ambiguity, and in refusing to permit the counterclaim to be filed for the reformation of the license agreement. In the absence of accident, fraud, or mutual mistake, equity will

not reform. De Witt v. Berry, 134 U. S. 306, 10 S. Ct. 536, 33 L. Ed. 896; Kramer et al. v. Harsch (C. C. A.) 278 F. 860, 863.

We have carefully examined every provision in the agreement, and every argument which the able and industrious counsel for defendants have advanced in support of their position, without finding anything in any provision, or in all of them combined, to defeat the plain provisions of paragraph 3. This is not the fault of counsel, for they have been most exhaustive in their work, and have pressed their argument with earnest emphasis. It is impossible for them or us to write the contract anew. The parties themselves are alone responsible for the provisions of the agreement, and must abide by the fair interpretation of its terms. To interpret them as they were written is our duty.

We think that the District Court did not commit error, and the decree is affirmed.