571 F.2d 1323
 78-1 USTC P 9407
 UNITED STATES of America and Keith P. Powers and Caroll W.
Butler, Revenue Agents, Internal Revenue Service,
Petitioners-Appellees,
v.
George B. GARRETT, President of Gardav, Inc., and Gardav,
Inc., Respondents-Appellants.
 No. 76-2283.
 United States Court of Appeals,
Fifth Circuit.
 April 26, 1978.
Rehearing Denied June 5, 1978.
 
 Vincent F. Kilborn, Mobile, Ala., for respondents-appellants.
 Robert E. Hauberg, U. S. Atty., Jackson, Miss., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Gilbert E. Andrews, Acting Chief, App. Section, Gary R. Allen, Michael J. Roach, Attys., Tax Div., Dept. of Justice, Washington, D. C., for petitioners-appellees.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before WISDOM, GODBOLD and CLARK, Circuit Judges.
 CHARLES CLARK, Circuit Judge:
 
 
 1
 The defendants, George B. Garrett and Gardav, Inc., appeal the final order of the district court ordering the enforcement of an Internal Revenue summons issued to Garrett as president of Gardav, Inc., for the production of corporate records relating to Gardav's corporate income tax liability for the taxable year 1973. Principally at issue in this case is whether the district court erred in entering a protective order which prevented Garrett from taking the depositions of two IRS agents and a tax auditor. Although we find that the district court erred in entering the protective order, the record produced at the enforcement hearing is adequate for us to determine that this error did not substantially prejudice the taxpayer's case. We therefore affirm the judgment of the district court ordering enforcement of the summons.
 
 
 2
 On December 19, 1974, the Internal Revenue Service notified George B. Garrett and his wife Margaret of an investigation of their 1973 tax returns. The IRS asked to see the Garrett's financial records for 1973. On December 24, 1974, Garrett gave Tax Auditor Elizabeth Wyatt, now Elizabeth Bostick,[1] financial documents relating to his personal affairs and to the several businesses that he and his wife operate, including their wholly-owned corporation, Gardav. On this occasion, Bostick and Garrett spent over an hour reviewing the records and making notations on Gardav's bank statements and cancelled checks.
 
 
 3
 Bostick's preliminary assessment of Garrett's personal return using an indirect computing technique known as a T-Account indicated a $60,000 understatement of income on Garrett's 1973 tax return. Bostick asked Garrett to meet with her to explain this discrepancy. Stating that he had no explanations apart from the contents of the records, Garrett refused. The records for Gardav were returned to Garrett on February 27, 1976, after he told Bostick that he needed them in order to prepare his income tax return for the current year.
 
 
 4
 After Bostick's review, the IRS expanded the scope of its investigation to include Gardav and assigned the case to Revenue Agent Caroll Butler, who, unlike Bostick, had training in corporate taxation. When Butler asked Garrett for Gardav's records, Garrett refused on the grounds that the IRS already had made an inspection of such records and could not make a second inspection without Gardav's consent unless the Secretary gave the notice specified in 26 U.S.C.A. § 7605(b).[2] On December 11, 1975, the IRS issued a summons to Garrett directing him to appear for examination and to bring with him Gardav's tax records. On December 29, 1975, the date appointed for compliance with the summons, Garrett appeared but did not produce the records on the grounds that the IRS had kept them in its physical possession from December 24, 1974, to February 27, 1975, that under Section 7605(b) the requested examination constituted a second inspection, and that since the Secretary or his delegate after investigation had not notified Gardav in writing that an additional inspection was necessary, no second inspection would be permitted. After Garrett refused to comply with the summons, Butler concluding that his examination had reached a roadblock referred Garrett's personal return to the Intelligence Division for a criminal investigation. The case was assigned to Special Agent George Bauwens.
 
 
 5
 On March 23, 1976, the IRS brought this action to enforce its summons. Three days later, the district court ordered Garrett to comply with the summons or to appear before the court on April 12, 1976, to show cause why he should not be ordered to comply. Prior to the show cause hearing, Garrett filed notice to depose Agent Butler, Special Agent Bauwens, and Tax Auditor Bostick. The government moved for a protective order barring all prehearing discovery, without mentioning any facts or circumstances in the case which would justify such a broad prohibition. In response to the government's mere unsupported request, the district judge struck taxpayer's notice to depose and issued the protective order which the government sought. During the evidentiary hearing, counsel for Garrett was able to cross-examine Agent Butler and Auditor Bostick. The district court enforced the summons but stayed the judgment pending this appeal.
 
 
 6
 On appeal, Garrett asserts the procedural error of refusing to allow him to depose Agents Butler, Bostick, and Bauwens. He additionally contends that the district court should not have enforced the summons because (1) the purpose of the summons was to harass him for asserting a statutory right, (2) the summons issued for the purpose of obtaining information solely for a criminal investigation, (3) the government could not make a second inspection until the Secretary or his delegate issued a notice after investigation that a second inspection was necessary, and (4) the IRS already possessed the records that it sought through the summons.
 
 
 7
 We consider first whether the district judge erred in barring prehearing discovery. United States v. Roundtree, 420 F.2d 845, 852 (5th Cir. 1969), held that a taxpayer is entitled to investigate the IRS' purpose in issuing a summons where the purpose has been put in issue and may affect the legality of the summons. United States v. Wright Motor Co., 536 F.2d 1090, 1094 (5th Cir. 1976), reaffirmed that principle:
 
 
 8
 We understand Roundtree . . . to have established the principle that when a taxpayer alleges in a responsive pleading that the material sought by the IRS is to be used solely for a criminal prosecution, or that the IRS is engaged upon a course of personal harassment, the taxpayer is entitled to investigate the IRS' purposes through deposition of the special agent.
 
 
 9
 Under Roundtree and Wright Motor, taxpayers in IRS summary enforcement proceedings may claim the benefits of the discovery provisions of the Federal Rules of Civil Procedure. In the case at bar, the taxpayer adequately placed the purpose of the IRS in issue and alleged circumstances under which the purpose would bear upon the legality of the summons. Therefore, Garrett was entitled to discovery, which the district court could have limited in light of the circumstances of the case. When the district court, upon a bare request from the government and without further inquiry, issued a protective order barring all discovery without citing any reason, it departed from Roundtree and Wright Motor.[3]
 
 
 10
 Determining that the district court erred when it entered the protective order does not end our inquiry. In reviewing a district court's curtailment of discovery under the Federal Rules of Civil Procedure, errors made with regard to the allowance of discovery do not require reversal unless they result in substantial prejudice to a party's case. See Bell v. Swift & Co., 283 F.2d 407, 409 (5th Cir. 1960); see also ISI Corp. v. United States, 503 F.2d 558 (9th Cir. 1974); Huff v. N. D. Cass Co. of Alabama,468 F.2d 172, 176-77 (5th Cir. 1972), aff'd in part, vacated and remanded in part on other grounds, 485 F.2d 710 (5th Cir. 1973) (en banc).
 
 
 11
 In considering whether the district court's refusal to permit discovery substantially prejudiced the taxpayer's case, we take into account that the latitude for discovery in a summons enforcement proceeding is more restricted than that generally permitted in other civil cases, for at least two reasons. First, the issues relevant to enforcement are few and the available sources of evidence are extremely limited. See United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Second, allowing unlimited discovery in a summons enforcement proceeding would place the IRS under a severe handicap in conducting a civil investigation, because it has the potential to cause delays which would jeopardize the integrity and effectiveness of the entire investigation.[4]
 
 
 12
 To decide whether the denial of discovery substantially prejudiced the taxpayer's case, we must determine the extent of discovery contemplated in Wright Motor and then assess the record to determine whether the error of the district court prevented the taxpayer from developing significant facts with a direct bearing upon whether the IRS summons should have been enforced. The district court rendered its opinion in the case at bar prior to our opinion in Wright Motor. However, because an appellate court applies the law in effect when the appeal is heard, we take Wright Motor as our yardstick to measure the extent to which the refusal to allow discovery prejudiced Garrett's case. See Bradley v. School Board of the City of Richmond, 416 U.S. 696, 711-16, 94 S.Ct. 2006, 2016-18, 40 L.Ed.2d 476, 488-490 (1974); Thorpe v. Housing Authority of the City of Durham, 393 U.S. 268, 281-83 & n. 38, 89 S.Ct. 518, 526-27 & n. 38, 21 L.Ed.2d 474, 483 & n. 38 (1969).
 
 
 13
 In Wright Motor we agreed with the First Circuit that a general solution to the taxpayer's need for discovery in summons enforcement cases would be for
 
 
 14
 'the district court to proceed directly to a hearing at which, if desired, the summonee could examine the agent who issued the summons, concerning his purpose. The court could then, by observation and, where necessary, its own questioning of the agent, make its own determination of whether exploration, as by discovery, seemed to be in order.
 
 
 15
 536 F.2d at 1095, quoting United States v. Salter, 432 F.2d 697, 700 (1st Cir. 1970). See also United States v. Bell, 448 F.2d 40, 42 (9th Cir. 1971); United States v. Bowman, 435 F.2d 467, 469 (3d Cir. 1970). We held that "(p) ermitting the taxpayer to depose the agent does not differ significantly from the procedure approved by the Salter court that allows a taxpayer to take the testimony of the agent at a hearing before the district court." 536 F.2d at 1095.
 
 
 16
 The district court's refusal to allow even the minimum exploration of the government's purpose that Wright Motor requires would have necessitated reversal except for the fact that the hearing below created a record which allows us to assess whether the taxpayer's case was substantially prejudiced. Wright Motor stated that the taxpayer's need for discovery could be satisfied if the district court allowed him to cross-examine at a hearing the agent who issued the summons. The district court in the case at bar allowed cross-examination of Agent Butler, at whose instance Agent Keith Powers issued the summons to Garrett. Powers, who actually signed the summons to Garrett, did so at Butler's request and had no other connection with the case. Apparently realizing Powers' distance from the investigation, Garrett never requested to depose him. It is true that Special Agent Bauwens was not available to Garrett for cross-examination at the hearing, but Bauwens did not enter the case until the referral of Garrett's personal tax return for criminal investigation, which took place after the summons for Gardav's records had issued. The legitimacy of a summons is tested as of the date of issuance. See United States v. Rosinsky, 547 F.2d 249, 254 (5th Cir. 1977); United States v. Cromer, 483 F.2d 99, 101 (9th Cir. 1973). See also Couch v. United States, 409 U.S. 322, 329 n. 9, 93 S.Ct. 611, 616 n. 9, 34 L.Ed.2d 548, 554 n. 9 (1973). Therefore, the alleged retaliatory transfer would not have directly affected the district court's enforcement of the summons. The district court allowed full cross- examination of the only two IRS employees actually involved in the investigation leading to the issuance of the summons: Auditor Bostick, who performed the preliminary review of Garrett's return; and Agent Butler, at whose instance the summons issued for Gardav's records. Thus, the record on appeal contains the testimony from which the district court properly could have determined under Wright Motor whether adequate development of Garrett's case required the use of formal discovery procedures.
 
 
 17
 Next, we assess the record to determine whether the district court's failure to allow discovery substantially prejudiced the taxpayer's case. We make this assessment in light of the sorts of facts that would be relevant to the legal theories advanced by the taxpayer as reasons for denying enforcement. Cf. Universal Brands, Inc. v. Phillip Morris, Inc., 546 F.2d 30, 36 (5th Cir. 1977; Littlejohn v. Shell Oil Co., 483 F.2d 1140, 1145 (5th Cir.), cert. denied, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973).
 
 
 18
 Garrett contends that the IRS already possesses the information sought through the summons so that under United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112, 119 (1964), the IRS may not obtain enforcement. Garrett relies upon United States v. Pritchard, 438 F.2d 969 (5th Cir. 1971), in which we denied enforcement where an agent held the taxpayer's files for several weeks and spent at least three to four hours examining the books. Because Bostick held Gardav's books for a much longer period, Garrett argues that we must hold that the government already possesses the information sought in the summons.
 
 
 19
 Pritchard does not bar the enforcement of the summons issued to Garrett. In Pritchard, the IRS never made reference to whether the Commissioner already possessed the information sought in the summons. Therefore, we agreed with the district court that the government had not shown the requisites for enforcement. See Powell, supra. The case at bar differs from Pritchard, because here the government alleged and set about to prove that it did not possess the information sought. To defeat the summons under these circumstances, Garrett had to show actual possession of the information by the IRS. Cf. United States v. Rosinsky, 547 F.2d 249, 253 (4th Cir. 1977); United States v. Schwartz, 469 F.2d 977, 985 (5th Cir. 1972), citing Pritchard, supra.
 
 
 20
 The record of the hearing shows that further discovery would have produced no new relevant facts concerning the alleged possession of Gardav's records by the government. Bostick testified about the records that she had seen and testified that she had copied none of Gardav's corporate records. Butler testified that Bostick gave him her work papers but none of Gardav's records when the case was transferred to him. Counsel for Garrett had a chance to inspect the work papers passed on to Butler and to cross-examine Bostick about their completeness. He also had an opportunity to cross-examine Butler and Bostick about their statements that the information contained in the work papers was not sufficient for a proper examination of Gardav and a determination of tax liability. The record developed supported the assertions of the IRS. Neither the cross-examination of the agents nor the testimony of Garrett suggested areas in which further discovery could shed light on the issue of possession.
 
 
 21
 Garrett also contended that the IRS had already made a first inspection of Gardav's books and could not make a second inspection without consent unless he received written notice under Section 7605(b) that the Secretary or his delegate had determined after investigation that an additional inspection was necessary. Garrett claimed that Bostick's perusal of Gardav's records in connection with his personal return constituted an inspection under the statute. This is incorrect.
 
 
 22
 Under United States v. Schwartz, 469 F.2d 977, 985 (5th Cir. 1972), when an investigation has not been completed, such examination is not a second inspection within the meaning of Section 7605(b). Schwartz agreed with an Eighth Circuit decision holding that Section 7605(b) "could not possibly and reasonably lend itself to a construction that would preclude the Government from making at least one meaningful examination of the books of account for the years involved." United States v. Giordano, 419 F.2d 564, 567 (8th Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970). Section 7605(b) would defeat the summons for Gardav's books only if Garrett had refuted the government's contentions that the investigation of Garrett's and Gardav's 1973 returns had not been closed and that no meaningful examination of Gardav's return had been made.[5]
 
 
 23
 At the hearing, Garrett had a full opportunity to elicit facts relevant to whether any meaningful examination had taken place. Counsel for Garrett cross-examined Bostick concerning the Gardav records she had seen and questioned both Bostick and Butler about the thoroughness of the T-Account analysis that Bostick performed on Garrett's return. However, Garrett never challenged Bostick's assertion that she had no training in corporate taxation and could not have performed a meaningful examination of Gardav's books, nor did he disagree that Bostick returned the books because he asked for them to complete his income tax return for the current year, not because she had satisfied herself as to the apparent $60,000 understatement or Gardav's involvement with that claim. The district court examined the Gardav records in camera to ascertain whether Bostick's notations on them supported Garrett's contention that one meaningful investigation had been made already. Again, the evidence adduced at the hearing indicated that the discovery sought by Garrett would not have been fruitful.
 
 
 24
 The procedures followed by the district court have produced a record from which we can determine that Garrett did not suffer substantial prejudice to his case from the district court's denial of discovery. The tenuous legal theories upon which Garrett's case rested almost condemned it from the start. The evidence produced by the government amply supports the conclusion that no first inspection of Gardav's books had been made under Section 7605(b) and that the information sought by the summons was not in the possession of the government.
 
 
 25
 In view of our decision that denial of discovery did not substantially prejudice Garrett's case, it is unnecessary to reach his other contentions. To support his contention that the IRS sought to enforce the summons solely for advancing a criminal investigation required Garrett to show that no valid purpose existed.[6] Because the district court determined that the IRS performed no meaningful first inspection and did not have the needed information in its possession, a valid civil purpose does exist. Furthermore, no evidence supports Garrett's charge of harassment if the IRS could lawfully require him to produce Gardav's books. When the IRS issued the summons, it had requested to see the Gardav books and Garrett had refused. Issuing the summons and seeking enforcement in the district court was the proper method to test the existence of the right asserted by Garrett.[7] Garrett suggested no other conduct by the IRS which could constitute harassment. The transfer of Garrett's personal return for criminal investigation allegedly in retaliation for his refusal of the summons for Gardav's books would not have a direct effect upon the validity of the summons, because the transfer took place after the summons issued. The evidence amply supported the district court's conclusion that the transfer was not part of a pattern of harassment which raised a question whether the IRS summons should be enforced.
 
 
 26
 The clear teaching of Wright Motor is that the discovery procedures in the Federal Rules of Civil Procedure apply in summary proceedings to enforce IRS summonses. However, enforcement proceedings where the appellant asserts that the district court has abused its discretion in curtailing discovery are to be reviewed as any other case under the Federal Rules. Technical errors do not require reversal unless the error substantially prejudiced a party's case. Therefore, the judgment of the district court enforcing the summons is
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 To avoid confusion, we refer to this auditor by her present name, Elizabeth Bostick
 
 
 [2]
 Section 7605(b) provides as follows:
 (b) Restrictions on examination of taxpayer No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional investigation is necessary.
 
 
 [3]
 Rule 26(c), Fed.R.Civ.P., provides that a protective order shall issue only upon a showing of "good cause." The burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements. See General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973), cert. denied, 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); Wright & Miller, Federal Practice & Procedure, § 2305 (1970 & 1976 supp.); see also United States v. United Fruit Co., 410 F.2d 553, 556-57 & n. 11 (5th Cir.), cert. denied sub nom. Standard Fruit & Steamship Co. v. United Fruit Co., 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969)
 
 
 [4]
 See United States v. Wright Motor, Inc., 536 F.2d 1090, 1095 (5th Cir. 1976), quoting United States v. Salter, 432 F.2d 697, 700-01 (1st Cir. 1970); Moore's Federal Practice, P 81.06(1) (1975 ed. & 1976-77 Supp.)
 
 
 [5]
 See United States v. Interstate Tool & Engineering Corp., 526 F.2d 59, 61-62 (7th Cir. 1975); United States v. House, 524 F.2d 1035, 1043 (3d Cir. 1975); United States v. Kendrick, 518 F.2d 842, 848-50 (7th Cir.), cert. denied, 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975); United States v. Bell, 448 F.2d 40, 42 (9th Cir. 1971); National Plate & Window Glass Co. v. United States, 254 F.2d 92, 93 (2d Cir.), cert. denied, 358 U.S. 822, 79 S.Ct. 35, 3 L.Ed.2d 63 (1958)
 
 
 [6]
 See Couch v. United States, 409 U.S. 322, 326, 93 S.Ct. 611, 614-15, 34 L.Ed.2d 548, 551-552 (1973); United States v. Moore, 485 F.2d 1165 (5th Cir. 1973). See also United States v. Troupe, 438 F.2d 117 (8th Cir. 1971)
 
 
 [7]
 Cf. United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88, 92 (1975)