**PAPERCRAFT CORPORATION,**
Plaintiff-Counterdefendant,

v.

**GIBSON GREETING CARDS, INC. and
Harry N. Abrams, Inc.,**
Defendants-Counterplaintiffs,

and

**Unieboek B.V./Van Holkema &
Warendorf, Additional Plaintiff
on the Counterclaims.**

No. 80 Civ. 697(MEL).

United States District Court,
S. D. New York.

June 10, 1981.

Amster, Rothstein & Engelberg, New York City, for plaintiff; Morton Amster, Anthony F. Lo Cicero, New York City, of counsel.

Albert Robin, New York City, for defendant-counterplaintiff, Harry N. Abrams, Inc.

LASKER, District Judge.

Papercraft Corporation moves for "summary judgment dismissing" the second affirmative defense asserted by Harry N. Abrams, Inc. ("Abrams").

Unieboek B.V./Van Holkema & Warendorf ("Unieboek"), a Dutch company, owns the copyright in a book originally published in the Dutch language and subsequently published in the United States under the title *Gnomes*, which is a fanciful story of elf- or dwarf-like characters living under ground. Unieboek granted Abrams an exclusive license under the copyright and Abrams has licensed to Gibson Greeting Cards the right to market giftwrap using the names, titles and characters from the *Gnomes* book. Abrams has also similarly licensed Barth & Dreyfuss (B&D), a subsidiary of Papercraft, to market cloth kitchen and bathroom accessories.

Papercraft also markets giftwrap using gnome characters in the design, and sues Abrams and Gibson seeking a declaration

that it is not infringing their rights and damages for unfair competition.

Abrams, Gibson and Unieboek counterclaim for copyright and trademark infringement and for unfair competition. In its second affirmative defense, Abrams contends that Papercraft is barred from obtaining trademark-related relief by the license agreement between Abrams and B&D, Papercraft's subsidiary. Paragraph 11 of that agreement provides in relevant part:

"11. *TRADEMARK RIGHTS.*

LICENSEE hereby acknowledges that UNIEBOEK and ABRAMS owns the exclusive rights to any trademark(s) now existing, or which may in the future exist, associated with the LICENSED DESIGNS and LICENSED PRODUCT(S), and agrees that any use of said trademark(s) shall inure to the benefit of UNIEBOEK. LICENSEE agrees not to act or fail to act in a manner adverse to said rights, and agrees to take whatever action is necessary or appropriate to protect UNIEBOEK'S rights in said trademark(s)."

Exhibit 2 to Affidavit of Julian Galperson sworn October 14, 1980.

Papercraft argues that although B&D is estopped from challenging the validity of the *Gnomes* trademark, Papercraft is not bound by the agreement entered into by B&D because the two companies are separate and operate independently.

Abrams argues that (1) Papercraft should be estopped because it is receiving the benefit of the license agreement (since B&D is wholly owned by Papercraft), (2) Papercraft is "implicitly a party" to the agreement because the preamble states that the licensee is "BARTH & DREYFUSS OF CALIFORNIA, a wholly-owned subsidiary of PAPERCRAFT CORPORATION," (3) Papercraft is "more than a parent of B&D," (4) Papercraft was involved in the negotiation of the agreement and (5) the acquisition of B&D by Papercraft was a de facto merger.

None of Abrams' contentions carries the day. As to those arguments which go to piercing the corporate veil between Papercraft and B&D, Abrams has not shown that B&D is substantially dominated by Papercraft, or, even if it were, that such control was used to perpetrate a fraud which proximately caused Abrams' alleged injury. *Interocean Shipping Company v. National Shipping and Trading Corporation*, 523 F.2d 527, 539 (2d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Fisser v. International Bank*, 282 F.2d 231, 239 (2d Cir. 1960). On the other hand, Papercraft has shown that its existence is separate and independent from B&D's by virtue of their separate employees and officers (except for one common officer), pension plans, corporate books and records, accounts, and offices (Affidavit of Julian Galperson, sworn October 14, 1980).

Abrams next contends that because Papercraft (as owner of B&D) benefits from the license of the *Gnomes* trademark to its subsidiary B&D, it should be estopped from denying the validity of the *Gnomes* trademark under the rationale of the doctrine of licensee estoppel—that one should not be permitted to challenge the validity of a trademark while reaping its benefits.

However, as Abrams concedes, there are no cases in which a doctrine of licensee estoppel has been extended to bar one other than a licensee from challenging a trademark's validity because of the derivation of benefit from the license. Moreover, the Seventh Circuit has rejected a similar argument in the only case we have found to address the issue, *Donald F. Duncan, Inc. v. Royal Tops Manufacturing Company*, 343 F.2d 655 (7th Cir. 1965). There, the court held that an agent of a licensee was not estopped from challenging the plaintiff's trademark, despite plaintiff's contention that the agent was benefitting from the license of the trademark to this principal. It is true that the court relied on the fact that the agent was not an agent for the licensee at the time the license agreement was entered, *id.* at 659, and here Papercraft owned B&D at the time the contract with Abrams was entered. However, the agent in *Duncan* was benefitting from the trade-

mark at the time the challenge to its validity was asserted, and Abrams' contention is that Papercraft should be estopped because it *presently* benefits from the license. Accordingly, *Duncan* is instructive. Furthermore, to sustain Abrams' position that Papercraft is estopped would appear to extend the doctrine of license estoppel to anyone who derives a benefit from the license of a trademark. Such an extension should not be made without indication by higher authority.

It should be noted that this case does not raise the question whether one who benefits from a license should be estopped because of having acted so as to avoid the restrictions placed on a licensee while retaining the trademark's benefits. There is neither an allegation nor any evidence showing that Papercraft hid behind the B&D entity either to benefit from the license or to avoid estoppel on its challenge to the trademark's validity, or in any other way acted in bad faith so as to warrant the extension of an equitable doctrine to this case.

Accordingly, the motion for summary judgment dismissing the second affirmative defense asserted by Abrams is granted.

It is so ordered.