TRANS PACIFIC
INSURANCE COMPANY

v.

TRANS–PACIFIC
INSURANCE COMPANY.

Civ. A. No. 90–2531.

United States District Court,
E.D. Pennsylvania.

Feb. 5, 1991.

H. Thomas Hunt, III, Cherry Hill, N.J., for plaintiff.

Jay E. Mintzer, William F. Sweeney, Philadelphia, Pa., for defendant.

## MEMORANDUM

WALDMAN, District Judge.

Presently before the Court are defendant's Motion for Reconsideration, defendant's Motion for Protective Order, defendant's Motion for Sanctions, plaintiff's Motion to Extend Time for Service, plaintiff's Motion to Compel, and plaintiff's Motion for Sanctions.

## I. DEFENDANT'S MOTION FOR RECONSIDERATION

On November 28, 1990, defendant filed a Motion for Reconsideration of the Court's Order of September 12, 1990, granting leave to plaintiff to join additional parties. Plaintiff responded on January 8, 1991, arguing that defendant's motion is untimely under E.D.Pa. Local Rule 20(g). Defendant's motion is untimely. Because the motion and briefs in connection there-

with, however, raise matters the clarification of which would appear better to focus the efforts of the parties and enhance the efficiency of the litigation, the court will address defendant's motion.

By its Order of September 12, 1990, the Court permitted plaintiff to amend its complaint to add four additional corporate defendants. The Court found that there were two viable theories of recovery against them. First, although plaintiff would carry a heavy burden in sustaining such a claim, the Court found that plaintiff could pursue a claim against these prospective defendants on an "alter-ego" theory of liability. Second, the Court found that plaintiff may have a claim against the additional defendants on an "inducement" theory.

Often a party asking a court to disregard the separate and distinct status of a corporate entity will attempt to show that the corporation was merely the alter ego of its officers. *See Zubik v. Zubik,* 384 F.2d 267, 271–72 (3d Cir.1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). More generally, a court may exert its equitable powers and disregard the corporate entity if it appears that piercing the corporate veil will prevent fraud, illegality, injustice, a contravention of public policy, or prevent the corporation from sheltering someone from criminal liability. *Id.* at 272. The court, however, will "start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Id.* at 273. These general principles apply to cases involving intellectual property rights.[1] *See, e.g., A. Stucki Co. v. Worthington Industries, Inc.,* 849 F.2d 593 (Fed.Cir.1988); *D.L. Auld Co. v. Park Electrochemical Corp.,* 553 F.Supp. 804 (E.D.N.Y.1982).

In *Stucki,* the plaintiff sued a second-tier subsidiary, the parent, and the president of the second-tier subsidiary, alleging infringement of plaintiff's patent. The district court found the second-tier subsidiary and its president, but not the parent, to be

---

**1.** Neither party cited any case in support of their respective positions on this motion.

liable. The Circuit Court affirmed noting that general principles relating to piercing the corporate veil applied and holding that the parent could be held liable only if the "evidence revealed circumstances justifying disregard of the status of [the subsidiary] and [the parent] as distinct, separate corporations." 849 F.2d at 596.

In *Auld*, the plaintiff sought to hold a parent corporation liable for the patent infringement activities of a subsidiary. Plaintiff relied on both "piercing the veil" and "direct liability" theories. Applying general piercing principles, the Court found that, although the parent held the subsidiary out as a "division" and provided its financing, the subsidiary ran its own day to day operations, determined its own budget, and maintained separate records. The court noted that there were no allegations that the subsidiary was grossly undercapitalized, that corporate formalities were not followed or that the parent improperly used its assets. Thus, the court found that the plaintiff had failed to show that the subsidiary had no separate existence or that the plaintiff would suffer an "unjust loss" if the corporate entity were not disregarded. *Id.* at 807.[2]

There are cases in which courts have imposed patent infringement liability on a parent for acts of a subsidiary, relying on "piercing" principles. *See, e.g., Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645 (10th Cir. 1980); *Radio–Craft Co. v. Westinghouse Electric & Manufacturing Co.*, 7 F.2d 432 (3d Cir.1925). In *Milgo*, the district court imposed patent infringement liability on a parent based on a finding that the infringing subsidiary was "the mere instrumentality, alter ego, or agency" of the parent. In affirming, the Tenth Circuit noted the existence of 100 percent stock ownership, the use of virtually the same directors, the financial dependence of the subsidiary, the subsidiary's undercapitalization, the substantial number of sales made by the parent, the parent's review of virtually all decisions and its establishment of policy and pricing guidelines for the subsidiary.

In *Radio–Craft*, the plaintiff sued a subsidiary and its parent for patent infringement. The district court found for the plaintiff. In affirming, the Third Circuit found that the "evidence indicates that the [subsidiary] was a mere instrumentality of the [parent]" and that the "[subsidiary] was completely dominated by the [parent]," and stated that where a subsidiary is "used as a mere agency or instrumentality of the owning company, courts will look through the screen of separate corporate control and place the responsibility where it actually belongs." 7 F.2d at 434–35.

In cases involving trademarks, courts have applied the same general piercing principles which place a heavy burden on the plaintiff. *See, e.g., U–Haul International, Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir.1986); *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978); *Papercraft Corp. v. Gibson Greeting Cards, Inc.*, 515 F.Supp. 727 (S.D.N.Y.1981).

In *Donsco*, the plaintiff brought a claim under the Lanham Act against a controlled corporation, its president and controlling shareholder, and a second firm conducted as a proprietorship by the same president and shareholder. The corporation and the president were held liable. The president was found liable as a participant in the unlawful acts rather than by piercing the corporate veil. The Court found that the president was liable because he "authorized and approved" of the unlawful conduct and not because the corporation was inadequately capitalized, was his alter ego, was being used to perpetrate a fraud or because corporate formalities were not properly complied with. *Id.* at 606. Such "direct" liability of individual shareholders and officers for their participation in an act of infringement is fairly well established. *See* P. Blumberg, *The Law of Corporate Groups*, at 296–307, 321–23 (1989). The direct liability of parent and affiliate corpo-

---

**2.** *See also Coleman v. Corning Glass Works,* 619 F.Supp. 950 (W.D.N.Y.1985) (citing *D.L. Auld* ); *Inland Steele Products Co. v. MPH Mfg. Corp.,* 22 F.R.D. 236 (N.D.Ill.1959); *Owl Fumigating Corp. v. California Cyanide Co.,* 24 F.2d 718 (D.Del. 1928), *aff'd,* 30 F.2d 812 (3d Cir.1929).

rations, although less common, is theoretically sound. *Id.* at 309–12.

In *Auld, supra,* although the Court dismissed the claim which relied on the piercing theory, it refused to dismiss the claim based on a direct liability theory. The plaintiff's allegation that the parent was involved in the subsidiary's decision to continue to market the infringing product was held to be sufficient.

In *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp.,* 480 F.Supp. 408 (W.D. Pa.1979), plaintiffs brought a patent infringement action against a controlled corporation, its family-owned parent, and certain family members. The plaintiff sought to impose "inducing" or "contributing" infringement liability against the family members and parent corporation for inducing, aiding and abetting the infringement activities of the controlled corporation. The Court held liable individual family members who served as officers of and actively participated in the management of the controlled corporation. The Court also held the parent liable as an active inducer of the infringement, finding that it had been "the active conscious force behind the acts of infringement performed by [the controlled corporation]." *Id.* at 417.

Thus, it is clear that courts apply general piercing principles in patent and trademark infringement cases, and hold a second corporation liable by "piercing the corporate veil" of the infringing corporation where a plaintiff meets the burden of showing that the separate and distinct status of the former entity should be disregarded. It is also clear that courts will hold individuals and parent or affiliate corporations liable where they are found to have induced or participated in the infringing activities.

■ Plaintiff alleges that defendant Trans–Pacific, Commonwealth Risk Management Corporation ("CARIB"), Medical Liability Purchasing Group ("MLPG"), and New World Trading Company ("New World"), referred to as the "Trans–Pacific Entities," are all affiliated companies controlled by one man, Mr. Ted Allen Combs. Plaintiff alleges that these corporations are all "mere alter-egos of one another" and that each is legally responsible for the acts, obligations and debts of every other. Thus, plaintiff suggests a "piercing" theory under which the liability of the additional defendants is derivative.

Plaintiff also appears, however, to set forth a direct liability theory. Plaintiff alleges that "the Trans–Pacific Entities marketed and caused to be sold in interstate commerce ... insurance policies ... which are associated with its company name and purported mark 'Trans–Pacific Insurance Company,' " that they intend to continue to solicit and write such policies. Plaintiff alleges that the Trans–Pacific Entities have adopted a mark which is virtually identical to the plaintiff's and have infringed plaintiff's mark with the intent to deceive the public.

Under the alter-ego or piercing theory, plaintiff must establish that defendant Trans–Pacific is the mere instrumentality of the other corporations and that as such its independent and distinct corporate status should be disregarded. Under the direct liability theory, plaintiff must establish that the additional defendants actively induced or participated in the alleged acts of infringement. Although, plaintiff's evidentiary burden is heavy, it has asserted facially valid claims against the additional defendants.

■ The court notes, however, that from plaintiff's response to the motion, it appears that its claim for monetary damages is very tenuous and that there well may be no right ultimately to recovery under an alter-ego theory.

In its response, plaintiff states:

> In addition to joining a solvent party from which to recover damages, Plaintiff is concerned about the prospect of future claims being asserted against it by insureds of Defendant, and wishes to maximize its chances of having a solvent source of recovery in the future against which to recover the cost of defending any such claims.

A *present* right to relief must be asserted against each defendant to be joined. *See*

C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1657 (1986). Plaintiff appears to be concerned about possible "future" claims.

Plaintiff also suggests that it is interested in collaterally estopping the additional defendants in "future" litigation. Plaintiff states in its response that:

> The primary benefit of naming alteregos of Trans–Pacific as parties to this litigation is that those alter-egos will be collaterally estopped from challenging any finding in this lawsuit in any later indemnity action asserted by Plaintiff against those entities to recover the costs incurred by the Plaintiff in defending against any claims asserted against Plaintiff by Defendant's past insureds. This, Plaintiff expects, may be of a real practical benefit, and fully justifies vigorous litigation at this stage of the proceeding against the various companies additionally joined.

Again, plaintiff must have a *present* right to relief against a party to be joined. Plaintiff cannot litigate issues which *may be* involved in some "future" law suit.

Where a plaintiff has asserted facially valid claims against additional defendants, however, the court will not deny leave to join them, in the absence of any evidence of record, because of questionable arguments advanced in plaintiff's brief. Accordingly, defendant's Motion for Reconsideration will be denied.

■ Alternatively, defendant requests that the Court amend its Order of September 12, 1990 to add a certification pursuant to 28 U.S.C. § 1292(b) so that the defendant may immediately appeal.[3] Defendant has not identified a "controlling question of law as to which there is substantial ground for difference of opinion." The law is clear

that multiple defendants may be joined in one trademark infringement action, and that all who induced or participated in unlawful acts of infringement may be liable. The law is clear that upon a proper showing, a corporate veil may be pierced. Whether plaintiff can prevail under any theory against the additional defendants will be determined by whether plaintiff can meet its heavy evidentiary burden. The action which will "materially advance the ultimate termination of the litigation" is for the parties to meet their responsibility to conduct meaningful discovery after which any meritless claims can be disposed of upon proper motions. Defendants request for certification under § 1292(b) will be denied.

## II. PLAINTIFF'S MOTION FOR LEAVE TO SERVE AMENDED COMPLAINT BEYOND THE 120–DAY TIME LIMIT

With its Answer to defendant's Motion for Reconsideration, plaintiff has filed a Cross–Motion to Extend Time for Service of Process and to Amend Caption. The defendant has not responded.

■ In its motion plaintiff states that, with the exception of CARIB, it has been unable to serve the additional defendants because it has been unable to locate them. Plaintiff states that defendant Trans–Pacific has refused to provide the addresses of these parties. It appears that plaintiff's interrogatory requests of June 29, 1990, to which defendant was ordered to respond on October 31, 1990, remain outstanding. Plaintiff has sufficiently shown good cause for an extension of time in which to serve the additional defendants.

Plaintiff also moves for a change in the caption to reflect the names of the addition-

---

**3.** 28 U.S.C. § 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of

Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

al parties. The Court will deny this motion without prejudice pending service on these parties.

## III. DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Defendant contends that plaintiff has disseminated information it has received through discovery to third parties including governmental agencies that are investigating the defendants' activities, and that plaintiffs are pursuing this litigation, "at least in part," for the purpose of providing such information to these agencies. Plaintiff acknowledges that it has given some of the information it has received to certain government agencies but states that its purpose in doing so has been to obtain aid in its own information gathering. Defendant moves for an order sealing all depositions previously taken as well as those to be taken in the future and holding all other discovery material confidential.

■ Any matter not privileged, which is relevant to the subject matter involved in the pending action, is subject to discovery. Fed.R.Civ. 26(b). Rule 26(c) authorizes a court to issue a protective order where justice so requires and upon good cause shown. The party seeking a protective order bears the burden of demonstrating the "good cause" required to support such an order. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986), *cert. denied,* 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1988). The moving party must show a "particular need" for protection. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule." *Id.* (citing *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978). The "harm must be significant." *Id.*

■ As a general rule, pre-trial discovery proceedings are public unless compelling reasons exist to deny public access. *American Telephone & Telegraph Co. v. Grady,* 594 F.2d 594, 596 (7th Cir.1979); *Parsons v. General Motors Corp.,* 85 F.R.D. 724, 726 (N.D.Georgia 1980); *Essex Wire Corp. v. Eastern Electric Sales Co.,* 48 F.R.D. 308, 310 (E.D.Pa.1969). Although discovery may not be undertaken solely for the purpose of obtaining information for use in another proceeding, the parties may make any lawful use of information rightfully gathered during discovery. *Id.* at 312.[4] Defendant has neither alleged nor shown that plaintiff has pursued this action solely for gathering information for use in another proceeding and has submitted no specific facts which demonstrate that public access should be denied.

Accordingly, defendant's motion will be denied.

## IV. DEFENDANT'S MOTION FOR SANCTIONS

Defendant has filed a "Motion for Sanctions" which in fact appears to be a motion to compel answers to discovery requests. The relief defendant seeks is an order compelling discovery under Fed.R.Civ.P. 37(a) and not sanctions under Rule 37(b).[5]

In August of 1990, defendant served interrogatory and document requests on plaintiff.[6] On September 25, 1990, Mr. Mintzer, counsel for defendant, sent a letter to Mr. Hunt, counsel for plaintiff, advising him that responses to the requests were overdue and asking him to report within ten days when responses would be sent. On October 3, 1990, only eight days after he sent this letter, Mr. Mintzer filed

---

**4.** *See also* C. Wright & A. Miller, Federal Practice and Procedure § 2040, at 291 (1970 & Supp. 1990).

The mere possibility of criminal proceedings against a party in a civil case cannot alone be a bar to discovery or to public access of such discovery. *See United States v. American Radiator & Standard Sanitary Corporation,* 388 F.2d 201, 204 (3d Cir.1987) ("we know of no rule or equitable principle that protects a defendant in a pending criminal prosecution from the disclo-

sure, by another person in a separate civil action, of evidence which may later become part of the prosecution's case against him.").

**5.** Sanctions for failure to answer discovery requests cannot be imposed under Rule 37(b) unless the moving party has obtained an order compelling discovery under Rule 37(a).

**6.** The parties have supplied no specific date as to when the request was served.

the motion to compel. Plaintiff contends that in so doing defense counsel violated E.D.Pa.Local Rule 24(f) by failing to make a reasonable effort to resolve the discovery dispute and that his certification under Rule 24(f) was disingenuous.

Defense counsel's letter of September 25 suggested that plaintiff had at least until October 5, 1990 to respond. Plaintiff's responses, however, were already late and it apparently never requested an extension of time. More importantly, it appears that when plaintiff did finally respond it did so mostly by way of objections.

■ In any event, the Court cannot rule on plaintiff's objections or defendant's waiver argument without copies of the discovery requests and answers or objections submitted by plaintiff, as required by Local Rule 24(b).

Accordingly, defendant's motion will be denied without prejudice.

The court again notes, as it did on October 31, 1990, that "the discovery rules are based on the assumption that voluntary compliance by the parties is to be expected." Sanctions under Rule 37(b) are available when necessary. The parties clearly do not appear to be conducting discovery in a cooperative and diligent manner. The court further notes that:

> The signature of the attorney or party constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law ... (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonably or unduly burdensome or expensive, given the needs of the case.

Fed.R.Civ.P. 26(g). The parties also should note their duty to supplement answers under Rule 26(e) and the sanctions which may be imposed under Rule 37(b).

## V. PLAINTIFF'S MOTION TO COMPEL

On November 21, 1990, plaintiff filed a Motion to Compel discovery. After numerous stipulations for extensions of time, defendant responded on January 10, 1991. Plaintiff seeks to compel the depositions of Mr. L. Allen Bramson and Mr. James Brooks and the production of certain documents pursuant to Rule 34. These requests appear to have been made on October 2, 1990. Defendant states that Mr. Brooks is not within its control, that Mr. Bramson is rarely in the United States and that the documents requested are not relevant.

■ If the person to be deposed is a party to the action, or an officer, director, or managing agent of a party to the action, a subpoena is not required and a notice is sufficient to require his attendance. C. Wright & A. Miller, Federal Practice & Procedure §§ 2107, 2112 (1970). If the deponent is not a party and does not consent to attend, then his attendance can be compelled only by a subpoena issued under Fed.R.Civ.P. 45.

■ A person under subpoena may be required to attend "at any place within 100 miles from the place where that person resides, is employed or transacts business in person, or is served, or at such other convenient place as is fixed by an order of court." Fed.R.Civ.P. 45(d)(2). If the deponent is a party, then the discovering party may set the place for deposition wherever he wishes subject to the power of the court to grant a protective order under Rule 26(c)(2) designating a different place. The general rule, however, is that the deposition of a corporate officer or agent should be taken at the corporation's principal place of business. *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979); *Oxford Industries, Inc. v. Luminco, Inc.*, 1990 WL 269728, 1990 U.S.Dist.LEXIS 17392 (E.D.Pa. Dec. 21, 1990); *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D.Mich.1987); *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D.Ill.1982); *Mitchell v. American Tobacco Company*, 33 F.R.D. 262 (1963). *See also Mill Run Tours v. Khashoggi*, 124

F.R.D. 547, 550 (S.D.N.Y.1989); *Work v. Bier*, 107 F.R.D. 789, 792 n. 4 (D.D.C.1985) (plaintiffs cannot complain if discovery at distant locations is required). The court has considerable discretion in determining the place of a deposition, may consider the relative expenses of the parties and may order that expenses be paid by the opposing party. Wright & Miller, *supra*, § 2112.

█ Plaintiff has made no showing that Mr. Brooks is an officer, director or managing agent of the defendant. There is nothing from which the court can conclude that a subpoena is not required. Accordingly, as to Mr. Brooks, plaintiff's Motion to Compel will be denied.

█ Plaintiff asserts that Mr. Bramson is defendant Trans–Pacific's chief financial officer. (*See* Motion for Sanctions, at 3.) Defendant has not contested this fact. Thus, the Court finds that Mr. Bramson can be compelled to attend a deposition. Mr. Bramson should be deposed at defendant's principal place of business, unless defendant agrees to produce him at a more convenient and accessible location. The defendant will be directed to reimburse plaintiff for one-half of plaintiff's reasonable transportation costs unless defendant produces Mr. Bramson at a location within a 100–mile radius of Philadelphia.

Plaintiff has outstanding 14 separate document requests. This includes requests to which defendant was already ordered to respond. Under Rule 34, defendant is required to respond within 30 days. It has not done so. Defendant will be directed to produce the documents, state a reasonable time and place at which they can be inspected or make reasonable objections consistent with Rule 26 and the Court's rulings on discovery matters in this case.[7]

## VI. PLAINTIFF'S MOTION FOR SANCTIONS

On November 21, 1990, plaintiff filed a Motion for Sanctions pursuant to Fed.R. Civ.P. 37(b), contending that defendant's failure to comply with the Court's prior discovery order and its history of dilatoriness warrant default judgment or, in the alternative, other sanctions.

Neither party appears to be conducting discovery expeditiously or in conformity with the applicable rules. The court will not impose sanctions at this time but will not hesitate to do so if either party fails to proceed in a diligent manner hereafter. Accordingly, plaintiff's Motion for Sanctions will be denied.

---

**7.** Nothing in this Memorandum is to be construed as affecting in any way defendant's duty to respond to the prior requests which are the subject of the Court's Order of October 31, 1990.